**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | | |
|---|---|---|
| WALTER SCOTT LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:21-cv-55 |
| | ) | |
| LIBERTY UNIVERSITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT**

Defendant Liberty University, Inc., by counsel and pursuant to Fed. R. Civ. P. 12(b)(6),

submits this Memorandum in Support of its Motion to Dismiss the Complaint (ECF No. 1).

## INTRODUCTION

This case is not really about Title IX. For Scott Lamb, Title IX is nothing more than a self-

promotional stepping stone to the front page of the kinds of publications that, until now, only ever

knew him as Liberty's mouthpiece. This egocentric order of priority is confirmed, on the one

hand, by the sparsity of Lamb's Complaint, and on the other by the dozens of articles and podcasts

in which he has parroted variations of his vague and conclusory allegations in the few days since

he filed them. But Lamb's frequent media appearances are no substitute for specific, plausible

factual allegations. Lamb has not—and cannot—explain how or why he thinks Liberty violated

Title IX, much less how his claimed opposition to any such violations caused his termination.

Because Lamb has not plausibly pled the elements of Title IX retaliation, nor can he do so through

the further spinning of facts, the Court should dismiss his Complaint with prejudice.

1

## RELEVANT FACTUAL ALEGATIONS

Liberty hired Lamb in 2018 as its Vice President of Special Literary Projects.  (Compl. ¶ 8.)[1]   In 2019, Lamb became Liberty's Senior Vice President of Communications and Public Engagement.  (*Id.* ¶ 16.)  Lamb does not allege he ever worked in Liberty's Title IX office or that his job responsibilities had any relation to Title IX.  Rather, Lamb served as Liberty's spokesperson and oversaw its communications on a wide variety of matters.  (*Id.* ¶¶ 18-19.)  Nonetheless, Lamb asserts that he "raised Title IX violations" to Liberty's leadership at various unspecified times "[t]hroughout his brief tenure[.]" (*Id.* ¶ 39.)

Until August 2020, Lamb reported to then-President Jerry Falwell Jr.  (*Id.* ¶¶ 17, 24.)  After Falwell's resignation, Liberty's Board of Trustees launched an independent investigation into "various facets of University operations by engaging outside counsel."  (*Id.* ¶ 25.)  That outside firm, Baker Tilly, interviewed Lamb as part of its investigation.  (*Id.* ¶¶ 29-30.)  Lamb does not allege that he raised any concerns about, or even discussed, Title IX matters with Baker Tilly.

On October 4, 2021, Lamb attended a meeting with members of Liberty leadership.  (*Id.* ¶ 32.)  During that meeting, Lamb stated that he "expressed dismay over the direction of the University and concern that the University had strayed so far from its original mission." (*Id.* ¶ 34.)  The "discussion became heated," and Liberty's current interim President, Jerry Prevo, allegedly responded by threatening to fire Lamb.  (*Id.* ¶ 35.)  Lamb claims he replied that he would not "participate in a cover up of various activities within the University" that he says he now believes "contradicted the law, including, *but not limited to*, the University's mishandling of many well-

---

[1] Liberty disputes Lamb's version of events, but recites them here as if true for purposes of this motion only.

publicized reports of sexual assault, harassment, and discrimination on campus[.]"  (*Id.* ¶ 36) (emphasis added).[2]

Lamb's Complaint provides no specifics about the alleged "mishandling," such as what incidents Liberty supposedly mishandled, how it mishandled them, or whether Lamb believed the "mishandling" was the result of sex bias by Liberty or otherwise a violation of Title IX.  The only detail that Lamb provides from this discussion is that Prevo called Lamb a "liar."  (*Id.* ¶ 37.)  Two days later, Liberty fired Lamb.  (*Id.* ¶¶ 45-46.)  This lawsuit followed.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "'factual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudging [his] claims across the line from conceivable to plausible.'"  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While the Court must accept the facts alleged in the Complaint as true, bare legal conclusions "are not entitled to the assumption of truth" and cannot state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Ultimately, Lamb must "allege facts sufficient to state all the elements of [his] claim." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006), *overruled in part on other grounds by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015).  "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotations omitted).

---

[2] In a footnote to this allegation, Lamb alludes to another pending Title IX lawsuit against Liberty. (Compl. ¶ 36 n.1.)  Lamb stops short, however, of claiming that he actually referenced this lawsuit or any of the incidents alleged in it in his conversation with Prevo on October 4.

# ARGUMENT

To state a Title IX retaliation claim, a plaintiff must plausibly allege (1) protected activity; (2) material adverse action; and (3) but-for causal connection between the two. *See Doe v. Washington & Lee Univ.*, 2021 WL 1520001 (W.D. Va. Apr. 17, 2021) (Moon, S.J.); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) (holding that Title IX's prohibition of discrimination "on the basis of sex" "requires 'but-for' causation"). Lamb's Complaint fails on both the first and third elements.

## I. Lamb Has Not Adequately Alleged Protected Activity

Lamb identifies two alleged protected activities: his participation in interviews with Baker Tilly and his allegation on October 4, 2021 that Liberty had somehow "mishandl[ed]" multiple unspecified reports of "sexual assault, harassment, and discrimination." (Compl. ¶¶ 52-53.) Neither of these vague allegations can support a Title IX claim.

Protected activity may include a plaintiff's opposition to *specific* unlawful practices. But anti-discrimination laws are not "general whistleblower statute[s]." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 264 (4th Cir. 2008) (explaining that because Title VII "prohibits discrimination on the basis of specifically enumerated grounds," complaints about matters outside the statute's scope are not protected).[3] "Complaints about management action that would not constitute unlawful discrimination do not count as protected activity." *Stovall v. H&S Bakery*, 2021 WL 2580746, at *7 (D. Md. June 23, 2021). In addition, a plaintiff does not engage in protected activity just by using words like "discrimination," "harassment," or "hostile work environment." *E.g.*, *Pettis v. Nottoway Cnty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014)

---

[3] Because Title IX claims are "governed by the same principles applicable to Title VII actions," cases applying Title VII principles are instructive. *E.g.*, *Preston v. New River Comm. Coll.*, 31 F.3d 203, 206-207 (4th Cir. 1994) (collecting cases).

("vague complaints of harassment" are not protected activity); *Dallas v. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (allegations of a "hostile work environment," without more, are not protected activity); *Young v. HP Enter. Servs., LLC*, 2011 WL 3901881, at *5 (E.D. Va. Sept. 6, 2011) ("complaining in general terms of discrimination or harassment" does not constitute protected activity). Rather, the plaintiff's complaint "must specifically relate to the protected conduct being infringed." *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 758 (W.D. Pa. 2010). Neither of Lamb's claimed protected activities meets this standard.

First, as to Lamb's participation in Baker Tilly's investigation, Lamb alleges no facts from which the Court could plausibly conclude that Lamb's participation had anything to do with Title IX. Lamb does not identify any instances of alleged sex discrimination that Baker Tilly was investigating. Lamb does not even identify the subject of the investigation as related to Title IX— to the contrary, he alleges only that Baker Tilly was investigating "various facets of University operations" under its former president. (Compl. ¶ 25.) Absent any connection to a prohibited practice, Lamb's participation in this investigation is not protected activity. *E.g.*, *Kearns v. Nothrop Grumman Sys. Corp.*, 2012 WL 1183017, at *5 (D. Md. Apr. 6, 2012) (finding that employee had not alleged protected activity based on vague allegations that "he filed complaints with Human Resources and the EEOC"); *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 583 (E.D. Va. 2009) (employee's participation in an internal investigation was not protected activity because the investigation did not concern unlawful discrimination).

Second, Lamb's account of the October 4 meeting fares no better. Lamb does not allege that he witnessed any sexual assaults or prohibited sex discrimination; that he reported any such discrimination; or that he had any contact with anyone who did. Nor does Lamb explain who he believes was discriminated against, by whom, how, or when. He alludes to "reports" of

discrimination, but provides no details about their substance.  He claims Liberty "mishandled" these unspecified reports, but does not say how.  And, most importantly, he does not allege that Liberty's actions had any discriminatory motives.  In other words, Lamb has not alleged that he protested any specific conduct that Title IX prohibits, nor has he alleged that he participated in an investigation into a Title IX complaint.  Under these circumstances, Lamb has not engaged in protected activity.  *E.g.*, *Montgomery v. Medstar Montgomery Med. Ctr.*, 2018 WL 3388351, at *7 (D. Md. July 12, 2018) (finding that employee's allegation about "Human Resources' mishandling" an incident with a volunteer was not protected activity because the plaintiff "never identified how Human Resources' actions were animated by impermissible considerations of race or sex"); *see also Entrekin v. City of Panama City Florida*, 376 F. App'x 987, 994 (11th Cir. 2010) (finding that employee's complaint that employer's internal harassment procedures "were not effective" was not protected activity because the employee did not identify any specific prohibited conduct); *Owen v. City of Oklahoma Police Dep't*, 2010 WL 5376329, at *4 (WW.D. Okla. Dec. 22, 2010) (finding that the plaintiff's objections to how his employer handled certain incidents was not protected activity absent allegations that the employer's actions were racially motivated).

In short, Lamb's "allegations are rife with labels and conclusions of 'protected activity' while his factual allegations related to the nature of his protected activity are vague." *Anderson v. Hoffman*, 2016 WL 11430764, at *10 (E.D.N.C. Feb. 16, 2016).  Lamb, therefore, has not stated a Title IX retaliation claim, and his Complaint should be dismissed.

## II.    Lamb Has Not Plausibly Alleged Causation

Because Lamb has not alleged protected activity, he necessarily has not alleged that any protected activity caused his termination.  Even imagining Lamb had engaged in protected activity, however, his Title IX retaliation claim would fail because his own Complaint shows that his vague

references to sex discrimination were not the but-for cause of his termination.  *Cf. Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (finding that in a Title IX retaliation case, the plaintiff "will have to prove that the [funding recipient] retaliated against him *because* he complained of sex discrimination").

　　To support his claim of causation, Lamb relies on temporal proximity:  he argued with Prevo on October 4, and Liberty fired him on October 6.  (Compl. ¶ 58.)  But two aspects of Lamb's remaining allegations defeat any inference of causation that this timing might otherwise permit.

　　First,  by Lamb's own account, he provoked Prevo by protesting "the direction of the University" generally and expressing "concern that the University had strayed so far from its original mission." (Compl. ¶ 34.) Lamb also states that he was "outspoken in opposition to certain perceived violations of the University's 501(c)(3) status mandate, among other issues that caused Plaintiff to believe the University and its leadership had deviated from its religious mission." (*Id.* ¶ 40.)  On top of that, Lamb confronted Prevo about an unidentified array of what he "believed to be corrupt practices[.]"  (*Id.* ¶ 37.)

　　Thus, Lamb's Complaint suggests that Liberty fired him for a host of reasons unrelated to Title IX:  he challenged Liberty's adherence to its spiritual mission; he accused it of corruption; he blamed Prevo for violating the restrictions associated with Liberty's 501(c)(3) non-profit status. Title IX was merely an afterthought.  Although Lamb speculates "on information and belief" that his vague allusions to Title IX—not his generalized disagreement with the University's direction or "perceived violations of [its]  501(c)(3) status"—were what angered Prevo (Compl. ¶ 37), Lamb's speculation is not enough, even on a motion to dismiss.  *Cf. Marshall v. C & S Rail Servs., LLC*, 2021 WL 1341801, at *14 (M.D.N.C. Apr. 9, 2021) (finding that allegations of disparate

treatment made "on information and belief," without supporting facts, could not survive a motion to dismiss).

Lamb's allegations are therefore insufficient to permit an inference of but-for causation. *E.g.*, *Phillips v. Dukes*, 2018 WL 835709, at *7 (D. Md. Feb. 12, 2018) (dismissing a retaliation claim in part because "the pleadings focus on the alleged racial bias animating the actions, suggesting that retaliation was not the 'but-for cause'"); *Downing v. Lee*, 2017 WL 11489271, at *3 (E.D. Va. Dec. 12, 2017) (finding that a plaintiff had not shown but-for causation based on allegations that "her prior EEO activity 'was certainly a motivating factor' in the non-selections"); *Brown v. SDH Educ. E. LLC*, 2014 WL 468974, at *6 (D.S.C. Feb. 4, 2014) (granting motion to dismiss a retaliation claim because the plaintiff's pleadings "suggest[ed]" that "'issues'" other than her EEOC complaint prompted the complained-of adverse action). Put another way, Lamb's own claim that he was terminated after a wide-ranging argument about various non-Title IX-related University practices shows that any protected activity was not the but-for cause of his termination. Accordingly, this point is fatal to Lamb's Complaint.[4]

Second, this conclusion is reinforced by Lamb's assertions that he complained to high-level Liberty executives, including Prevo, about alleged Title IX violations "[t]hroughout his short tenure[.]" (Compl. ¶ 39.) Lamb does not say when these reports supposedly occurred or what they were about, but he appears to maintain that he had been complaining about Title IX violations since he was hired in 2018. Yet, until October 6, 2021, Lamb suffered no consequences from these reports. To infer that Liberty suddenly turned on Lamb because he persisted in pressing the same cause he had allegedly championed for three years defies common sense. *Cf. Jennings v. Walgreen*

---

[4] And, now that Lamb has admitted Liberty's numerous grounds for firing him, he cannot truthfully amend his Complaint to say otherwise.

*Co.*, 805 F. Supp. 2d 1345, 1352 (S.D. Fla. 2011) (finding that, where the employee's lawsuit had been pending for years before termination, the ongoing nature of the protected activity precluded a finding of causation).

For this second, independent reason, Lamb's Title IX claim cannot proceed, and the Court should dismiss it.

## CONCLUSION

For the reasons above, Liberty respectfully requests that the Court dismiss Lamb's Complaint with prejudice.

Dated:  November 4, 2021

Respectfully submitted,

LIBERTY UNIVERSITY, INC.
BY COUNSEL:

   /s/ Scott C. Oostdyk
Scott C. Oostdyk (VSB No. 28512)
Heidi E. Siegmund (VSB No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000
(804) 775-1061 (facsimile)
soostdyk@mcguirewoods.com
hsiegmund@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send a true and correct copy to all counsel of record.

_____/s/_____
Heidi E. Siegmund (VSB No. 89569)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000
(804) 775-1061 (facsimile)
hsiegmund@mcguirewoods.com

*Counsel for Defendant*
