# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| WALTER SCOTT LAMB ) | |
| ) | Case No. _____ |
| Plaintiff, ) | |
| v. ) | Hon. Norman K. Moon |
| ) | |
| LIBERTY UNIVERSITY, INC., ) | Div.: Lynchburg |
| a Virginia corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## FIRST AMENDED COMPLAINT

Walter Scott Lamb, through his attorneys, Rhoades McKee, P.C. and Thomas H. Roberts & Associates, P.C., alleges:

## PRELIMINARY STATEMENT

1. Plaintiff, Walter Scott Lamb, sues Liberty University, Inc. ("Defendant" or the "University") for violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, which prohibits educational discrimination on the basis of sex, including retaliation for engaging in protected opposition to Title IX discrimination or participating in a Title IX proceeding.

2. Defendant hired Walter Scott Lamb on or around January 2, 2018 as Vice President of Special Literary Projects. During his employment at Liberty University, Walter Scott Lamb performed his duties as Vice President of Special Literary Projects and, later, as Senior Vice President of Communications and Public Engagement with exemplary integrity and diligence. Despite Plaintiff's achievements in his role, Defendant terminated his employment in retaliation for his opposition to the University's mishandling of Title IX sexual misconduct accusations, including many allegations of sexual assaults by current and former male staff, contractors, and

students against current and former male and female students and employees of the University that went uninvestigated, and his participation in an independent investigation conducted by outside counsel of the same.

3. On October 6, 2021, after approximately three years and nine months of service to Liberty University, Defendant summarily fired Plaintiff at the direction of the acting University President.

## JURISDICTION

4. This action arises under, *inter alia*, 20 U.S.C. § 1681, which prohibits educational discrimination and retaliation on the basis of sex and thus this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (relating to federal question jurisdiction) and 28 U.S.C. § 1333(a)(3) (relating to equal rights actions).

## VENUE

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the University is a Virginia corporation subject to personal jurisdiction in this District.

6. Venue is proper in the Lynchburg Division of the United States District Court for the Western District of Virginia because the conduct supporting this action occurred in this Division.

## PARTIES

7. Plaintiff is an adult man and citizen of the Commonwealth of Virginia.

8. Defendant employed Plaintiff from January 2, 2018 to October 6, 2021, during which time he served as Vice President of Special Literary Projects before being promoted to Senior Vice President of Communications and Public Engagement.

9. Upon information and belief, Defendant is a Virginia nonstock corporation.

10. Upon information and belief, Defendant's registered agent is David M. Corry. Upon information and belief, Defendant's registered agent's office is located at 1971 University Blvd., Liberty University, Lynchburg, Virginia 24515-0002.

11. Upon information and belief, Defendant receives federal financial assistance, including, but not limited to, accepting students who pay tuition, in part, with federal financial aid directly distributed to the students.

12. Defendant is a private institution of higher education, offering undergraduate degrees as well as a full slate of graduate programs.

13. Defendant is accredited by the Southern Association of Colleges and Schools Commission on Colleges, among other organizations.

14. Defendant is authorized to confer degrees by the Commonwealth of Virginia.

## FACTS

15. Plaintiff was hired as Vice President of Special Literary Projects on or about January 2, 2018.

16. In or around April 2019, Plaintiff was assigned more responsibilities and given the new title of Senior Vice President of Communications and Public Engagement in the newly created Office of Communications and Public Engagement.

17. Throughout his employment at Liberty University, Plaintiff reported directly to the Office of the President.

18. As Senior Vice President of Communications & Public Engagement, Plaintiff oversaw three communications outlets for the University: Liberty University News, The Standing for Freedom Center, and the student newspaper, "The Champion".

19. Plaintiff's job responsibilities included serving as spokesperson and media liaison for the University.

20. Plaintiff was also tasked with special projects on behalf of the University President such as speechwriting, ghostwriting for publications, and networking with alumni, donors, parents of students, and representatives of various nonprofit organizations.

21. As Senior Vice President of Communications and Public Engagement, Plaintiff was a member of Defendant's leadership team.

22. Plaintiff's employment was terminated on October 6, 2021.

23. Upon information and belief, at the time of Plaintiff's termination, Defendant's Executive Leadership team was composed of President Jerry Prevo, General Counsel David M. Corry, Provost, and Chief Academic Officer Dr. Scott Hicks, Online Provost Shawn D. Akers, Executive Vice President for Human Resources Laura Wallace, Executive Vice President of Strategic Partnerships and Alliances Glenn Clary, Campus Pastor Jonathan Falwell, Executive Vice President of Enrollment Management & Marketing Ron Kennedy, Director of Athletics Ian McCaw, Executive Vice President of Inclusion, Diversity, and Equity Shon Muldrow, and Chief Financial Officer Robert Ritz.

24. Upon information and belief, Jerry Falwell Jr. was President of the University at the time of Plaintiff's hire until Mr. Falwell's resignation on August 24, 2020, following reports of sexual impropriety.

25. In the wake of Mr. Falwell's resignation, on August 24, 2020, the University's Board of Trustees launched an independent investigation into various facets of University operations by engaging outside counsel.

26. According to a University press release dated August 31, 2020, Jerry Prevo had "the full range of his presidential authority to implement any changes necessary to improve the ongoing operations of the University and to enrich the spiritual mission of Liberty University, not only for its students but also for every executive, administrator, faculty member, and the entire staff, and for a prospective new president, as well."

27. Upon information and belief, members of the University's Executive Leadership have the authority to take corrective measures on the school's behalf, including related to the implementation, execution, and enforcement of Title IX sexual harassment (including sexual violence) and sex-based discrimination policies and procedures.

28. Since approximately mid-2020, Plaintiff had been fielding many inquiries from members of the media concerning Title IX investigations.

29. On or about January 28, 2021, Plaintiff was contacted by Stephen Wesley Burrill, a University staff member in the Department of Strategic Analysis via his University email account to participate in an interview with the outside counsel conducting the independent investigation. University Vice President of Finance and Administration Cindy Gaebe, a member of Senior Leadership, was copied on the email.

30. In the email, Mr. Burrill stated, "The Liberty University Board of Trustees has engaged Baker Tilly to conduct a forensic investigation, and they have the carte blanche to interview employees they select."

31. Plaintiff participated in about 20-25 hours of interviews with outside counsel as part of the independent investigation over eight months.

32. During several interview sessions with outside counsel as part of the independent investigation, Plaintiff discussed the lack of meaningful investigation into campus sexual assaults and Title IX violations.

33. Upon information and belief, members of the Executive and Senior Leadership teams knew that Plaintiff had been interviewed by outside counsel as part of the investigation.

34. On March 11, 2021, independent journalist Julie Roys contacted Plaintiff by telephone in his capacity as Senior Vice President of Communications and Public Engagement with concerns about Liberty University's handling of sexual assaults and harassment.

35. On March 23, 2021, Ms. Roys contacted Plaintiff by email to ask him to facilitate her interviewing several university executives about the alleged gang rape of the woman who would become Jane Doe #2 in a lawsuit filed in July by twelve Jane Does, which led to Plaintiff asking questions of University leadership, particularly General Counsel Corry.

36. On July 20, 2021, twelve Jane Does filed a lawsuit under Title IX against Liberty University in the U.S. District Court for the Eastern District of New York, alleging *inter alia* the University "intentionally created a campus environment where sexual assaults and rapes are foreseeably more likely to occur than they would in the absence of Liberty's policies." *Does 1-12 v. Liberty University, Inc.*, Case No. 2:21-cv-03964-JMA-ARL (E.D.N.Y. July 20, 2021) ¶ 29 ("Does' Lawsuit").

37. As Liberty University spokesperson, Plaintiff's job involved preparing the University's response to media inquiries about the allegations in the Does' Lawsuit.

38. Upon information and belief President Prevo was out of Virginia for much or all of May, June, July, August and September 2021.

39. Upon information and belief, outside counsel with Baker Tilly presented a report at a special meeting of the Board of Trustees on or around Wednesday, September 29, 2021 detailing the findings of their independent investigation.

40. University President Prevo was scheduled to speak at LU's convocation on or around Friday, October 1, 2021. Plaintiff was tasked with drafting and reviewing the University President's planned remarks, which he did on or around September 30, 2021.

41. Upon information and belief, a student-led organization called "Justice for Janes" was planning to attend convocation en masse with teal ribbons to support victims of sexual assault at Liberty University. Upon information and belief, the organization has also called for an independent investigation of Liberty University's Title IX office and human resource department's handling of sexual assault and harassment claims.

42. President Prevo was expected to address the issue of sexual assaults on campus due to the spotlight cast by the Does' Lawsuit on the University's Title IX office and its lack of meaningful investigation of sexual assault claims the culture of complicity and retaliation further victimizes individuals who report sexual assault.

43. Plaintiff reviewed President Prevo's planned speech and urged President Prevo not to deliver the speech as drafted because it dishonestly implied that the law firm hired to defend the University against the Does' Lawsuit instead was hired to investigate the allegations.

44. Plaintiff also expressed concerns about the entirety of the speech because of its lack of empathy, transparency, and patronizing tone and substance. Plaintiff provided his feedback in a memo to President Prevo and General Counsel Corry to which they did not respond.

45. President Prevo did briefly address the issue of sexual assault and harassment on October 1, 2020 with platitutes about wanting students to feel safe.

46. Upon information and belief, President Prevo and Campus Pastor Jonathan Falwell posed for this photograph at a homecoming football game approximately a week following his remarks at convocation and which was later posted to the social media site Instagram:



47. On or around Monday, October 4, 2021, Plaintiff was called to a meeting with three members of University leadership, including President Prevo, Chief Financial Officer Ritz, Vice President of Finance and Administration Gaebe, and Executive Vice President of Strategic Partnerships and Alliances Clary.

48. During the October 4 meeting, Plaintiff expressed dismay over the direction of the University and concern that the University had strayed so far from its original mission.

49. Plaintiff repeatedly stated that he would not be silenced or participate in a cover up of activities within the University that Plaintiff believes contradicted the law, including the University's mishandling of many well-publicized reports of sexual assault, harassment, and

discrimination on campus committed by current and former male students and staff against current and former female students and staff.

50. During the October 4 meeting, University President Jerry Prevo called Plaintiff a "liar." Upon information and belief, this epithet reacted to Plaintiff's vocal opposition to the University's handling of what Plaintiff believed to be corrupt practices, which included the University's failure to address Title IX violations, by the highest levels of University leadership and the Board of Trustees.

51. Upon hearing President Prevo demand his resignation, Plaintiff urged Prevo and the University Chief Financial Officer, who was also present, to bring the University General Counsel Corry into the meeting.

52. The discussion became heated. University President Prevo threatened to terminate his employment and demanded Plaintiff's resignation.

53. Plaintiff again asserted that the University needed to address the Title IX violations or, he believed, it would face a wave of allegations centered around Title IX.

54. The October 4, 2021, meeting was not the first time that Plaintiff had challenged the University's handling of sexual assault complaints on campus. During his employment, Plaintiff raised the issue of Title IX violations to many members of the Executive Leadership team, including, but not limited to, President Prevo, his predecessor Jerry Falwell, Jr., General Counsel Corry, and the Executive Director of the Title IX office, Nate Hopkins.

55. Plaintiff discussed these issues with Mr. Hopkins on several occasions with the belief that Mr. Hopkins had the ability to change the current Title IX policies and procedures.

56. The day after the Executive Leadership meeting, October 5, 2021, University General Counsel Corry met with Plaintiff, ostensibly, to negotiate a separation agreement.

9

57. Upon information and belief, University President Jerry Prevo had instructed Mr. Corry to meet with Plaintiff and come to terms on his separation from employment.

58. Plaintiff believes the severance offered by the General Counsel, acting on the authority of the President, was an attempt to buy his silence.

59. Plaintiff refused the proposed terms of the separation because he would be required to resign immediately and to sign a non-disclosure agreement.

60. The next day, Plaintiff was contacted by Executive Vice President of Human Resources Laura Wallace and instructed to call.

61. Plaintiff telephoned that day Ms. Wallace and she informed him of his immediate termination.

## COUNT I

## RETALIATION IN VIOLATION OF TITLE IX, 20 U.S.C. § 1681.

62. Plaintiff incorporates by reference paragraphs 1 through 61 as fully set forth here.

63. Title IX prohibits sex discrimination in any education program or activity receiving federal financial assistance.

64. Defendant is an educational institution subject to the prohibitions in Title IX.

65. Upon information and belief, Defendant is a private institution of higher education, operating an education program or activity.

66. Defendant is a recipient under Title IX because it receives tuition from students funded with federal financial aid directly distributed to the students.

67. Plaintiff engaged in protected activity by opposing Title IX discrimination in the form of mishandling of sexual assault and harassment complaints.

68. Plaintiff also engaged in protected activity by participating in an independent investigation by outside counsel into the University's operations and which purported to include its Title IX practices.

69. The University knew of Plaintiff's protected activity.

70. Upon information and belief, the University's Executive and Senior Leadership have authority to take corrective measures on the school's behalf for violating Title IX.

71. University officials, including, but not limited to, President Prevo and General Counsel Corry had actual notice of and were deliberately indifferent to the misconduct.

72. Plaintiff suffered an adverse employment action when the University, at the direction of President Prevo, terminated his employment.

73. Plaintiff's termination was immediately after his vocal opposition to the University's mishandling of sexual assault and harassment complaints in violation of Title IX and following his eight months of participation in the independent investigation into University practices.

74. Plaintiff was terminated for engaging in activity protected under Title IX.

75. Plaintiff has sustained damages as a result of Defendant's conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgement as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

C. Award to Plaintiff all costs and reasonable attorneys fees incurred in connection with this action;

D. Award to Plaintiff compensatory damages;

E. Award to Plaintiff punitive damages; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by jury.

Respectfully Submitted,

Dated: November 18, 2021

RHOADES MCKEE PC
By:     /s/ Ian A. Northon
Ian A. Northon, Esq.
*Admitted Only Pro Hac Vice*
Michigan—P65082
Pennsylvania—207733
Florida—101544
55 Campau Ave., N.W., Ste. 300
Grand Rapids, MI 49503
Telephone: (616) 233-5125
ian@rhoadescmkee.com
jjolliffe@rhoadesmckee.com
mclayton@rhoadesmckee.com
ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE
I hereby certify that on this 18th day of November, 2021, we served a true copy of this First Amended Complaint through the Court's Electronic Filing System on all counsel of record.
/s/ Ian A. Northon