## *DRAFT*
## MEMO OF UNDERSTANDING

**Purpose**

The purpose of this Memorandum of Understanding ("MOU") is to provide an outline of the relationship and responsibilities between the Standing for Freedom Center of Liberty University, Inc., a Virginia Non-stock Corporation ("S4F of LU" and/or "LU") and David Lane ("Lane") and his 501c3 organization, Vineyard Outreach of America. Each of them may also be referred to individually as "Party" or collectively as "Parties" until a formal contract more fully reflecting these terms may be executed by the Parties if they agree it is necessary and beneficial.

The Parties sign this MOU because they intend to create a partnership:

> (1) **to fundraise major gifts** to the University from a pool of benefactors who currently are not part of the LU family.

> (2) **to develop "new programming"** ("Lane programming") for the Center in support of stated desires of current Executive leadership of the University.

The Parties acknowledge a previous and positive relationship with one another. In 1995, LU employed Lane as a fundraiser under Dr. Jerry Falwell, Sr. Further, Lane has continued to be in personal relationship with various members of the Board of Trustees and key employees of the University – including Scott Lamb. Prior to his employment at LU, Lamb was engaged in both *pro bono* and compensated work for David Lane's 501c3. Therefore, Lamb has a deep understanding of Lane's aims and methods for getting Christian pastors, laypeople, and young people to engage with public policy and the political process.

The terms below provide a general framework of the intentions and obligations of the Parties:

1. **General Mission, Goals and Objectives of the "new programming" / "Lane programming":**

    THIS NEEDS TO BE FLESHED OUT – by STEVE MICHAEL?

    WHAT IS THE "NEW PROGRAMMING"?


DEFENDANT'S EXHIBIT 10   12/16/21   6:21 CV 55

2. **Location:**

   a. The location of Lane's team is disbursed throughout North America, with no impact on the facilities of LU. Lane may choose to place staff in Lynchburg and he himself may decide to work out of Lynchburg – but this will be determined by what he and Lamb determine to be most effective for achieving the desired ends.

3. **Timing:**

   a. To achieve the purposes of this MOU, it is the intent of the parties that they both move forward at the beginning of LU's 2021-2022 fiscal year, beginning July 1, 2021.

4. **Budget and Cost:**

   a. Lane will be paid as an independent contractor at the rate of $30,000 per month for a period of 12 months beginning July 1, 2021.

   b. Lane will receive a bonus commission of 15% on all monies raised.

   c. The entire cost of Lane's programming will come from the fundraising he secures (see #6).

5. **Staffing and Contractual Engagements:**

   a. Lane is responsible for the cost of his own staffing. His staffing expands and contracts in response to the fundraising he secures for the programming. The people he employees work for him directly as independent contractors. LU bears no fiscal responsibility for them.

   b. The expenses for the programming Lane will undertake will expand and contract in response to the fundraising he secures.

6. **Fundraising for the Center's Programming**

   a. Some donors will give to fund the programming of the Standing for Freedom Center, along the following lines:

2

1. The *current* Standing for Freedom programming ("Helfenbein programming"), under the leadership of Ryan Helfenbein, Executive Director of the Center, with direct reporting to Scott Lamb, Senior Vice President of Communications & Public Engagement.

2. The *new* programming of Standing for Freedom ("Lane programming"), directed by David Lane, founder of the American Renewal Project, with direct reporting to Scott Lamb, Senior Vice President of Communications & Public Engagement.

b. "Fundraising for the Center's Programming" donations will be allocated as follows:
   Current programming (Helfenbein)   30%
   New programming (Lane)             55%
   Commission                         15%

7. **"Fundraising for the Endowment" Allocations**

   a. Some donors will allocate gifts to fund the LU Endowment and/or specific capital improvement projects.

   b. Fundraising for the Center donations will be allocated as follows:

   Endowment and/or Capital improvements    85%
   Commission                                15%

8. **General Mission, Goals and Objectives of the Fundraising Work:**

   a. To provide secondary financial support for the *current* programming (Helfenbein) of the Standing for Freedom Center.

   b. To provide the sole financial support for the new programming (Lane) of the Standing for Freedom Center.

   c. To provide incredible streams of new funding for the Endowment and/or capital improvement projects of Liberty University.

   d. To bring high wealth Christian individuals and institutions into relationship with Liberty University, for networking partnerships that further the mission of the University and provide the kind of soft resources that allows LU to become the premiere Evangelical institution of higher education.

9. **Liberty University's Obligations: (WHAT ELSE?)**

    a. To provide funding from its operating budget to pay the salary of independent contractor David Lane.

    b. To continue to provide administrative support for the existing daily operations of the Standing for Freedom Center (such as accounting, legal, marketing, procurement, postal, information technology, webpage, etc.) above and beyond the Center's budget. That is, to continue the existence and support of the Standing for Freedom Center, so as to make it possible for David Lane to raise funds for the Center.

    c. Receive and receipt tax-deductible contributions earmarked for the Center and ensure such funds are segregated and support the Center's budget.

10. **David Lane's Obligations: (WHAT ELSE?)**

    a. To serve as a public ambassador of the Center.

    b. To produce "new programming" consistent with this MOU.

    c. To raise all funds for the new programming.

    d. To use his best efforts, influence and personal connections to make the Center successful in fulfilling its mission.

    e. To coordinate outside communications and messaging on behalf of the Center consistent with this MOU.

    f. To use his existing "pastor's email list" for the purpose of publishing once-weekly email authored by Standing for Freedom leadership.

    g. To provide Standing for Freedom with contact information for attendees for all events during the term of this contract.

    h. To write and execute contracts with staff, vendors, consultants, etc. as between himself and the third parties, not with Liberty University.

    i. To collaborate closely with LU through its Senior Vice President for Communications and Public Engagement, including the establishment of transparent protocols for financial management of the "new programming" of the Center, with the highest standards of fiduciary responsibility.

j. To consistently provide financial reports with the frequency and detail specified in writing by LU's Senior Vice President for Communications and Public Engagement.

## 11. Indemnification

a. The Parties shall mutually indemnify, defend, and hold each other and all its officers, employees, and agents harmless from and against any and all actions, liabilities, claims, damages, suits, liens, judgments, attorney's fees, and costs arising out of or resulting from the negligent and/or unlawful acts or omissions of any Party or any Party's officers, employees, agents, or subcontractors occurring during or in connection with performance under or regarding this MOU. This obligation to indemnify each Party's officers, employees, and agents shall survive the expiration or termination of this MOU for any reason.

## 12. Termination

a. This MOU may be terminated without any obligation or liability to any Party:
   i. at any time by the mutual agreement of the Parties; or
   ii. by any of the Parties for any reason, or no reason at all, by the provision of written notice to the other Parties.
b. Notwithstanding any statement contained herein to the contrary, Section 9 hereof shall survive any termination or expiration of this MOU (other than by execution of one or more definitive agreements).


David Lane                          Liberty University, Inc.
Address                                      1971 University Boulevard
City, State ZIP                     Lynchburg, VA 24515


DAVID LANE                          LIBERTY UNIVERSITY, INC.


by _____                  by _____