**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| WALTER SCOTT LAMB,<br><br>Plaintiff,<br>v.<br><br>LIBERTY UNIVERSITY, INC.,<br>a Virginia corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:21-cv-00055<br><br>Hon. Norman K. Moon |

**COUNSEL FOR PLAINTIFF, IAN A. NORTHON'S ANSWERS TO LIBERTY UNIVERSITY'S SET OF COURT-AUTHORIZED QUESTIONS**

Comes now, Ian A. Northon, Counsel for Plaintiff, and states the following in response o Liberty University's Set of Court-Authorized Questions:

**INTRODUCTION**

During oral argument on Defendant Liberty University's Motion for Expedited Discovery and to Compel Disclosures Regarding Protected Documents Reviewed by Lamb's Counsel [ECF No. 29], the Court Ordered Counsel for Plaintiff to submit responses to Questions filed by Defendant Liberty University under the Court's inherent authority. In compliance with the Court's oral ruling, the undersigned counsel identified in the caption below (**"This Counsel"**) now submits as its responses these objections and answers.

Counsel for Plaintiff met with Counsel for Liberty telephonically and through electronic mail exchanges before filing these objections and answers in the interest of resolving the areas of disagreement. Some concerns were resolved through that conversation. Based on Counsel for Liberty's representations during that call, Counsel for Liberty conceded the following:

First, the questions are directed specifically to This Counsel individually, and not to This Counsel's co-counsel or his law firm generally; and therefore these objections and answers are

provided individually by This Counsel on his own behalf, notwithstanding Liberty's more expansive definition of "You" and "Your" contained in Definition 26. And that further, consistent with that agreement and understanding, This Counsel's answers are limited to his personal knowledge.

Second, Plaintiff's Counsel requested assurance from Liberty's Counsel that the questions were not intended to elicit or require any response that would resulted in a general waiver of any attorney-client privilege or work-product protected material and that all such privileges remain intact to the same extent as if these questions and responses had never been exchanged. Ms. Seigmund verbally agreed and as of the time of filing, no other attorney for Liberty has conferred or clarified that statement. But, Ms. Siegmun suggested that she would have to confirm her position with Mr. Oostdyk.

## GENERAL OBJECTIONS

The following General Objections apply to Liberty University's "Court-Authorized Questions" and are incorporated by reference into each specific response contained below. The assertion of the same, similar, or additional objections, or the provision of partial answers in response to Liberty University's particular questions, does not waive any of This Counsel's General Objections.

1) No mechanism within the Federal Rules of Civil Procedure authorizes interrogatories on counsel for a party. *See* Fed. R. Civ. P. 33(a) ("a party may serve *on any other party*"); *Hickman v. Taylor*, 329 U.S. 495, 504, 67 S. Ct. 385, 390, 91 L.Ed. 451 (1947) (emphasis added holding that Federal Rule of Civil Procedure 33 and 34 are limited to parties in the proceeding, "thereby excluding their counsel"); *State of Md., to Use of Peters v. Baltimore & O.*

*R. Co*., 7 F.R.D. 666, 667 (E.D. Pa. 1947) (sustaining a plaintiff's objection to interrogatories directed to his counsel).

2) This Court's oral ruling authorizing questions to counsel was made during the hearing on Liberty University's Motion for Expedited Discovery and To Compel Disclosures Regarding Protected Documents Reviewed by Lamb's Counsel, which attached its proposed questions as Exhibit F "Liberty University's First Set of Interrogatories to Counsel for Plaintiff". This Counsel, therefore, objects to each and any question that is different from the so-called "Interrogatories" in Exhibit F. The Exhibit contains the only questions "authorized by the court" in any sense and were the only questions before the Court or for which either the Court or Plaintiff's Counsel had notice or an opportunity to be heard.

3) This Counsel also objects to the statements made in Liberty University's "Introduction" and "Liberty's Prior Attempts to Secure Compliance from Plaintiff's Counsel" because they do not pose questions that call for a response. Neither this objection nor the lack of further response to those statements is intended or may be construed as an admission of the allegations in those statements.

**Specific Objections and Answers**

**Question No. 1:** Given that, in response to Liberty's previous inquiries regarding Your review of Liberty Privileged and/or Work-Product Documents, You have only commented on Your Firm's alleged non-review of *Privileged* Documents, have You reviewed or looked at any Liberty Work-Product protected documents?

**Objections**: Both Plaintiff and This Counsel object to the stated predicate to the question. It is misleading and inaccurate in its importation or insertion of a term narrowly defined within

these questions (see Definitions ¶35, "Privileged Documents"). The assertion "You have only commented on Your Firm's alleged non-review of *Privileged* Documents" improperly imports and relies on a *post-hoc* definition of the narrowly defined term created by Counsel for Liberty and ascribes that meaning to a statement by This Counsel. Yet, the term "privileged" usually includes materials covered by the work-product doctrine. *See, e.g.*, *United States v. Caldwell*, 7 F.4th 191 (2021); *Grand Jury Subpoena v. United States*, 870 F.3d 312 (2017); *Chevron Corp. v. Page (In re Naranjo)*, 768 F.3d 332 (2014).

**Response**: Subject to and without waiving these objections, This Counsel answers no.

**Question No. 2**: Given that You pled, in paragraphs 43 and 44 of the First Amended Complaint, details about a "memo" created by Plaintiff, have You reviewed or looked at the "memo" referenced therein?

**Objections**: Plaintiff and This Counsel object to this Question to the extent that it requires or purports to require disclosure by This Counsel of the activities undertaken in preparation of the Amended Complaint or any other activity in furtherance or preparation for litigation in this case.

**Response**: Subject to and without waiver of these objections, This Counsel answers no.

**Question No. 3**: If Your answer to Question No. 2 is anything other than "yes," did You rely on Plaintiff's account of the "memo" when pleading it in the First Amended Complaint?

**Objections**: This Counsel objects to Question No. 3 to the extent that that it directly and indirectly asks for information communicated by Plaintiff to one or more of his attorneys in clear circumvention and attempted violation of the attorney-client privilege, or unfairly opens the door

to ask about other privileged work-product. This Counsel further objects that the phrase "account of the 'memo'" is ambiguous and requires him to guess as to its actual meaning.

**Response**: Subject to and without waiving his objections, Undersigned Counsel responds that Plaintiff's Counsel undertook what it believed to be a reasonable inquiry of the facts before completing the Amended Complaint, which included but was not limited to analyzing Plaintiff's factual assertions.

**Question No. 4**: When pressed by WSET interviewer Cynthia Beasley for Documents to support the claims he was making, Plaintiff told Ms. Beasley that he had "already spoken with other media outlets…and some of those things have been put into their hands." Did you advise Plaintiff to provide any Documents to any reporter or media outlets, including but not limited to, Julie Roys, WSET, *Politico* or *Salon*?

**Objections**: This Counsel objects to Question No. 4 because it specifically asks about what legal advice, if any, This Counsel gave Plaintiff. Further, that inquiry is not even limited to advice covering treatment or use of "Privileged Documents"—the purported source of Liberty's concern—but references any "Documents" generally. Thus, even if a limited invasion of the attorney-client privilege was ordered by tis Court (which This Counsel believes was not), the question posed by Liberty's Counsel is far broader that Liberty's original motion and stated concerns. This contrivance represents a disrespectful and unfair assault on Lamb's attorney-client relationship with This Counsel and should not be countenanced by this Court.

**Question No. 5**: Have You reviewed or looked at any of the "things" Plaintiff referenced in the interview he gave to WSET on October 27, 2021?

**Objections**: This Counsel objects to Question No. 5 because it is logically unsound and would require This Counsel to know what "things" Mr. Lamb was referring too; but asking that

question of Mr. Lamb creates precisely the risk Liberty complains of and, if taken to its logical conclusion, would require Lamb to breach his agreements with Liberty by disclosing to This Counsel for advice on whether he breached his confidences of his former employer. Further, to the extent that the "things" referenced are not privileged, confidential, or Liberty-owned documents otherwise protected from use or disclosure by Plaintiff, asking whether This Counsel has reviewed them unfairly invades Lamb's attorney-client privilege and This Counsel's work product protections. That said, no further response to this question is possible without violating This Counsel's ethical obligations to Lamb, therefore, This Counsel is construting and interpreting Question No. 5. as this Court not deliberately ordering This Counsel to violate his duty to his client.

**Question No. 6**: Without examining further or disclosing the content of any such Documents, please Identify any Documents You received from Plaintiff that are Liberty Attorney-Client Privileged or Work-Product protected, including, without limitation, all Documents that were created by, provided to, and/or reviewed by Liberty's in-house or external counsel during Plaintiff's employment at Liberty.

**Objection**: This Counsel objects that Question No. 6 is internally inconsistent in that the phrase "Without examining further or disclosing the content of any such Documents, please Identify any Documents" includes the term "Identify" which is defined to mean, "to give, to the extent known, the . . . general subject matter (for other types [i.e., non-email] of documents)." Practically, and logically, it is impossible to answer Question No. 6 without violating at least one of the alternative sets of directions. Further, the Question requires the This Counsel to form and apply a legal judgment over the protected status of documents that may lack context or any of the objective criteria later used to define what is to be included in inquiry and to assume that documents that reveal they were prepared by or directed to Liberty's legal counsel were, in fact,

prepared by or directed to them in response to their instructions, and to determine whether other documents lacking such indicators were or were not prepared by, provided to, or even just "reviewed by" such legal counsel. Sisyphus would have an easier task than This Counsel if he takes the improper Question as formulated.

**Response**: Subject to and without waiving his objections, This Counsel responds that he has no present recollection of having seen any documents marked Privileged, Confidential, or Attorney Work Product, and none that the bear the name of anyone known to be Liberty's legal counsel, except such documents that Liberty's legal counsel provided to him or his client.

**Question No. 7**: For each Document identified in Your response to Question No. 6, please Identify any Persons at Your Firm that have reviewed, accessed or handled the Document.

**Response**: Subject to and without waiver of the objections asserted in response to Question No. 6, which are incorporated by reference, this question is inapplicable; the response is none.

**Question No. 8**: For each Document identified in Your response to Question No. 6, please explain how those Documents have been used by You or Plaintiff in this Matter.

**Response**: Subject to and without waiver of the objections asserted in response to Question No. 6, which are incorporated by reference, this question is inapplicable; the response is none.

Respectfully Submitted,

Dated: March 24, 2021

RHOADES MCKEE PC

By:*/s/ Ian A. Northon*
Ian A. Northon, Esq.
*Admitted Only Pro Hac Vice*
Michigan—P65082
Pennsylvania—207733
Florida—101544
55 Campau Ave., N.W., Ste. 300
Grand Rapids, MI 49503
Telephone: (616) 233-5125
ian@rhoadescmkee.com
jjolliffe@rhoadesmckee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2022, I presented the foregoing document(s) to the Clerk of the Court for filing and uploading to the CM/ECF system, which will provide electronic notice and copies of such filing(s) to counsel of record.

/s/ Ian A. Northon