# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF VIRGINIA
# Lynchburg Division

| | |
|---|---|
| WALTER SCOTT LAMB, ) | |
| ) | Case No. 6:21-cv-00055 |
| Plaintiff, ) | |
| v. ) | Hon. Norman K. Moon |
| ) | |
| LIBERTY UNIVERSITY, INC., ) | |
| a Virginia corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### COUNSEL FOR PLAINTIFF, E. MEAGHAN CLAYTON'S ANSWERS TO LIBERTY UNIVERSITY'S SET OF COURT-AUTHORIZED QUESTIONS

Comes now, E. Meaghan Clayton, Counsel for Plaintiff, and states the following in response to Liberty University's Set of Court-Authorized Questions:

### Introduction

On March 2, 2022, during oral argument on Defendant Liberty University's Motion for Expedited Discovery and to Compel Disclosures Regarding Protected Documents Reviewed by Lamb's Counsel [ECF No. 29], the Court Ordered Counsel for Plaintiff to submit responses to Questions filed by Defendant Liberty University under the Court's inherent authority. In compliance with the Court's oral ruling, the Undersigned Counsel now submits as its responses these objections and answers.

The Undersigned Counsel met with Counsel for Liberty telephonically and through electronic mail exchanges in advance of filing these objections and answers in the interest of resolving the areas of disagreement. Some concerns were resolved through that conversation. Based on Counsel for Liberty's representations during that call, the Undersigned Counsel has been advised by Counsel for Liberty:

(1) The questions are directed specifically to the Undersigned Counsel individually, and not to The Undersigned Counsel's co-counsel or her law firm generally; and therefore these objections and answers are provided individually by the Undersigned Counsel on her own behalf, notwithstanding Liberty's more expansive definition of "You" and "Your" contained in Definition 26. Consistent with that agreement and understanding, the Undersigned Counsel's answers are limited to her personal knowledge.

The Undersigned requested assurance from Counsel for Libery that the questions are not intended to elicit or require, and any responses will not be asserted to have resulted in, a general waiver of any attorney-client privilege or work-product privilege; and all such privileges remain intact to the same extent as if these questions and responses had never been exchanged. Although Ms. Seigmund verbally agreed, she stated that she would have to confirm that position with Mr. Oostdyk. The Undersigned Counsel did not receive confirmation of that assurance prior to the filing of this document.

## General Objections

The following General Objections apply to Liberty University's "Court-Authorized Questions" and are incorporated by reference into each of the specific responses contained herein. The assertion of the same, similar, or additional objections, or the provision of partial answers in response to Liberty University's particular questions, does not waive any of Undersigned Counsel's General Objections.

1) No mechanism within the Federal Rules of Civil Procedure authorizes interrogatories on counsel for a party. *See* Fed. R. Civ. P. 33(a) ("a party may serve on any other party"); *Hickman v. Taylor*, 329 U.S. 495, 504, 67 S. Ct. 385, 390, 91 L.Ed. 451 (1947) (holding

that Federal Rule of Civil Procedure 33 and 34 are limited to parties in the proceeding, "thereby excluding their counsel"); *State of Md., to Use of Peters v. Baltimore & O. R. Co*., 7 F.R.D. 666, 667 (E.D. Pa. 1947) (sustaining a plaintiff's objection to interrogatories directed to his counsel).

2) The Court's oral ruling authorizing questions to counsel was made during the hearing on Liberty University's Motion for Expedited Discovery and To Compel Disclosures Regarding Protected Documents Reviewed by Lamb's Counsel, which attached its proposed questions as Exhibit F "Liberty University's First Set of Interrogatories to Counsel for Plaintiff". Undersigned Counsel objects to each and any question that is different than and/or substituted in lieu of the "Interrogatories" contained in Exhibit F, which were the only questions "authorized by the court" in its ruling on Liberty University's Motion and were the only questions which were before the Court or for which either the Court or Counsel for Lamb had notice.

3) Undersigned Counsel objects to the statements made in Liberty University's "Introduction" and "Liberty's Prior Attempts to Secure Compliance from Plaintiff's Counsel" on the grounds that they do not pose questions that call for a response. Neither this objection nor the absence of further response to those statements is intended or may be construed as an admission of the allegations contained in the statements.

### Specific Objections and Answers

**Question No. 1:** Given that, in response to Liberty's previous inquiries regarding Your review of Liberty Privileged and/or Work-Product Documents, You have only commented on Your Firm's alleged non-review of *Privileged* Documents, have You reviewed or looked at any Liberty Work-Product protected documents?

**Objections**: Undersigned Counsel and Plaintiff objects to the stated predicate to the question. It is misleading and inaccurate in its importation or insertion of a term narrowly defined within these questions (see Definitions ¶35, "Privileged Documents"). The assertion "You have only commented on Your Firm's alleged non-review of *Privileged* Documents" improperly imports and relies upon the *post-hoc* definition of the narrowly defined term created by Counsel for Liberty and ascribes that meaning to an earlier statement by the Undersigned Counsel. The term "privileged" typically includes materials covered by the work-product doctrine. *See, e.g.*, *United States v. Caldwell*, 7 F.4th 191 (2021); *Grand Jury Subpoena v. United States*, 870 F.3d 312 (2017); *Chevron Corp. v. Page (In re Naranjo)*, 768 F.3d 332 (2014).

**Response**: Subject to and without waiving these objections, Undersigned Counsel answers, no.

**Question No. 2**: Given that You pled, in paragraphs 43 and 44 of the First Amended Complaint, details about a "memo" created by Plaintiff, have You reviewed or looked at the "memo" referenced therein?

**Objections**: The Undersigned Counsel and Plaintiff object to this Question to the extent it requires or purports to require disclosure by the Undersigned Counsel of the activities undertaken in preparation of the Amended Complaint or any other activity in this matter.

**Response**: Subject to and without waiver of these objections, Undersigned Counsel answers, no.

**Question No. 3**: If Your answer to Question No. 2 is anything other than "yes," did You rely on Plaintiff's account of the "memo" when pleading it in the First Amended Complaint?

**Objections**: Undersigned Counsel objects to Question No. 3 in that it inquires directly and/or indirectly regarding information communicated by Plaintiff to one of his attorneys in clear circumvention and violation of the attorney-client privilege, and/or opens the door to inquiry regarding other privileged work-product. The Undersigned Counsel further objects that "account of the 'memo'" is ambiguous and requires her to speculate as to its meaning.

**Response**: Subject to and without waiving her objections, Undersigned Counsel responds that Plaintiff's Counsel undertook what she believed to be a reasonable inquiry of the facts prior to completing the drafting of the Amended Complaint, which inquiry included but may not have been limited to ascertaining factual representations from Plaintiff.

**Question No. 4**: When pressed by WSET interviewer Cynthia Beasley for Documents to support the claims he was making, Plaintiff told Ms. Beasley that he had "already spoken with other media outlets…and some of those things have been put into their hands." Did you advise Plaintiff to provide any Documents to any reporter or media outlets, including but not limited to, Julie Roys, WSET, *Politico* or *Salon*?

**Objections**: Undersigned Counsel objects to Question No. 4 for the reason that it inquires specifically regarding what advice, if any, the Undersigned Counsel gave to Plaintiff. Further, that inquiry is not even limited to advice regarding the treatment or use of "Privileged Documents" – the purported source of Liberty's concern – but regarding any "Documents" generally. Therefore, even if the more limited invasion of the attorney-client privilege was permitted (which it is not), the question posed is far beyond the scope of Liberty's original motion and stated concern and represents a brazen assault on the sanctity of the attorney-client relationship.

**Question No. 5**: Have You reviewed or looked at any of the "things" Plaintiff referenced in the interview he gave to WSET on October 27, 2021?

**Objections**: Undersigned Counsel objects to Question No. 5 for the reason that it requires the Undersigned Counsel to know what "things" Mr. Lamb was referring too; but asking that question of Mr. Lamb risks creating precisely communication of information by Plaintiff to the Undersigned Counsel that Liberty asserts is or would be a breach of privilege, inasmuch as he would have to describe the "things." Further, to the extent the "things" referenced are not privileged, confidential, or Liberty-owned documents otherwise protected from use or disclosure by Plaintiff, asking whether Undersigned Counsel has reviewed them infringes attorney-client privilege and work product. Accordingly, no further response to this question is possible.

**Question No. 6**: Without examining further or disclosing the content of any such Documents, please Identify any Documents You received from Plaintiff that are Liberty Attorney-Client Privileged or Work-Product protected, including, without limitation, all Documents that were created by, provided to, and/or reviewed by Liberty's in-house or external counsel during Plaintiff's employment at Liberty.

**Objection**: Undersigned Counsel objects that Question No. 6 is internally inconsistent in that the phrase "Without examining further or disclosing the content of any such Documents, please Identify any Documents" includes the term "Identify" which is defined to mean, "to give, to the extent known, the . . . general subject matter (for other types [i.e., non-email] of documents)." It is therefore impossible to answer the Question without violating at least one of the alternative sets of directions. Further, the Question requires the Undersigned Counsel to form and apply a legal judgment with respect to the protected status of documents that may lack any of the objective criteria later used to define what is to be included in inquiry and to assume that documents that

indicate they were prepared by or directed to Liberty's legal counsel were, in fact, prepared or directed to them, and to determine whether other documents lacking such indicators were or were not prepared by, provided to or even just "reviewed by" such legal counsel. This is an impossible task as formulated.

**Response**: Subject to and without waiving her objections, Undersigned Counsel responds that she has no present recollection of having seen any documents with any indication or mark identifying them as "Attorney-Client Priveleged" or "Work-Product protected" or that bear the name of anyone known to be Liberty's legal counsel, except such documents as such legal counsel have provided to her directly.

**Question No. 7**: For each Document identified in Your response to Question No. 6, please Identify any Persons at Your Firm that have reviewed, accessed or handled the Document.

**Response**: Subject to and without waiver of the objections asserted in response to Question No. 6, which are incorporated by reference, this question is inapplicable.

**Question No. 8**: For each Document identified in Your response to Question No. 6, please explain how those Documents have been used by You or Plaintiff in this Matter.

**Response**: Subject to and without waiver of the objections asserted in response to Question No. 6, which are incorporated by reference, this question is inapplicable.

Dated: March 24, 2022

Respectfully Submitted,

>RHOADES MCKEE PC
>By:*/s/ E. Meaghan Clayton*
>E. Meaghan Clayton.
>*Admitted Only Pro Hac Vice*
>Michigan—P85409
>Minnesota—0400380
>Illinois—6289237
>55 Campau Ave., N.W., Ste. 300
>Grand Rapids, MI 49503
>Telephone: (616) 233-5136
>mclayton@rhoadesmckee.com
>rtakens@rhoadesmckee.com

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2022, I presented the foregoing document(s) to the Clerk of the Court for filing and uploading to the CM/ECF system, which will provide electronic notice and copies of such filing(s) to counsel of record.

/s/ E. Meaghan Clayton