# EXHIBIT G

McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Scott C. Oostdyk
Direct: 804.775.4743

soostdyk@mcguirewoods.com
Fax: 804.698.2133

**McGUIREWOODS**

**VIA HAND DELIVERY**
Scott Lamb
1675 Austin Mill Road
Evington, Virginia 24550

October 22, 2021

        **Re: Return of Liberty University's Electronic and Physical Property**

Dear Mr. Lamb,

      I write at the request of our client, Liberty University, to remind you of certain obligations in connection with your recent separation from employment by LU.

      As part of your employment, you received access to confidential LU documents and information, including, without limitation, business plans, personnel, donor, alumni, and student information, financial information, strategies, marketing plans, and other proprietary information. You also had the opportunity to access attorney/client privileged, confidential, proprietary, and other forms of sensitive information. As you were advised in LU's Employee Handbook, and by various LU policies and procedures, such information remains the property of Liberty University, even upon your departure and even when it was and is under your personal control. This is the case regardless of the form or medium of the documents, electronic records, or information (including, without limitation, e-mails, recordings, text messages, notes, and electronically stored information). All of these documents, communications, and things are and remain the property of Liberty University and cannot be retained, used, or disclosed by you without Liberty University's express consent.

      Liberty University's policy obligates you to return all such confidential information and all other LU documents, records, and other property upon the termination of your employment. As you may recall, you also are subject to, and have acknowledged, one or more currently applicable Legal Holds, which required you to preserve documents because of ongoing litigation impacting Liberty University. You are obligated for this reason, as well, to return all LU documents, recordings, and material to Liberty immediately upon your departure. Therefore, to the extent you have not already done so, please immediately aggregate and return all of Liberty University's property still within your possession, including all documents, emails, hard copy documents, electronically stored data, recordings of LU personnel, recordings of matters involving LU personnel, and/or all other information created or obtained by you in the course of your employment with Liberty. Please arrange for the return of this material to LU on or before close of business on **Monday, October 25**.

If you have questions about the process of returning LU's property, about any documents that you have signed for LU, about the scope of the information that LU considers to be its property, about your compensation or benefits at separation, or, generally, about returning University property, please contact Laura Wallace, Executive Vice President of Human Resources, at ljwallac@liberty.edu // (434) 592-7330.

Liberty appreciates your service and appreciates in advance your efforts to have this routine process of aggregating LU property remain amicable. To the extent matters cannot be resolved timely, however, Liberty reserves the right to pursue all legal and equitable remedies available under Liberty's policies and applicable law. We point out those remedies can include monetary damages, an award to LU of its attorneys' fees as specified under Section 7.15 of Liberty's Employee Handbook, and preliminary and permanent injunctive relief.

Thank you for your anticipated cooperation.

Sincerely,

Scott C. Oostdyk

cc: Ms. Laura Wallace

McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Scott C. Oostdyk
Direct: 804.775.4743

**McGuireWoods**

soostdyk@mcguirewoods.com
Fax: 804.698.2133

October 29, 2021

**By U.S. and Electronic Mail (inorthon@rhodesmckee.com)**

Ian Northon, Esq.
55 Campau Ave., NW, Suite 300
Grand Rapids, MI 49503

Re: **Handling of Liberty's Protected Documents by Scott Lamb's Team**

Dear Ian:

We understand from Tom Roberts that you are lead counsel to H. Scott Lamb ("Lamb"), a recent employee of Liberty University ("Liberty" or "LU"). As we advised Tom by letter, and in response to this call, we are writing with concern for documents and other materials that Lamb created, received, stored, and retained while an employee of Liberty. Many of the LU documents that Lamb controls are potentially attorney/client privileged and/or work product protected materials. Such materials are the exclusive property of ("Liberty") – as are all of Lamb's Liberty documents, and other materials. Liberty alone has the right to control, view, and disseminate – and even view – such attorney/client or work product protected materials. As Lamb's counsel, we advise you against any disclosure by Lamb to anyone of the attorney/client and work-product-protected Liberty materials within Lamb's control without the prior expressed consent of Liberty. This would include the viewing of these materials even by you as Lamb's attorney. For the reasons presented below, any lapse by Lamb in his handling of LU protected documents and other confidential and LU materials could lead to damages incurred by Liberty. Moreover, to the extent that Lamb permits you to view privileged or work product materials, this could lead to your disqualification as Lamb's counsel by a court of competent jurisdiction.

As you know, on October 6, 2021 Lamb was separated from Liberty after an earlier altercation with senior Liberty management in a meeting at which LU's President conducted due diligence oversight into the operation of Lamb's LU department. As you also know, during that workplace interaction, Lamb called Liberty's President, Dr. Jerry Prevo, a "liar" in front of a roomful of LU executives. Lamb claimed the President provided Lamb express pre-approval of various unauthorized expense items. Lamb later attempted to demonstrate that President Prevo had directed Lamb to go beyond the law by playing recordings that Lamb had surreptitiously made of conversations he had with Prevo. Lamb conceded that he had a practice for a number of years of making such secret recordings of President Prevo, and his predecessor Jerry Falwell, Jr. Lamb's termination was precipitated by (1) his abuse of trust by making secret workplace recordings, (2)

Ian E. Northon, Esq.
October 29, 2021
Page 2

his insubordination in the October 4, 2021 meeting, (3) his poor management of LU resources, and (4) his abuse of Liberty expense practices. Despite duties specified in LU policies and express demands issued by Liberty, Lamb has yet to return the many LU documents, materials, items, papers, recordings, data, communications, documents and other information ("materials") that Lamb generated or received while in Liberty's employ.

Lamb has been explicitly advised of his duty to keep LU's confidences, to carefully protect its property, and to return all documents, materials, and recordings upon departure. Lamb was hired by Jerry Falwell Jr. on or about January 2, 2018. On many occasions since, Lamb had been oriented to Liberty's various policies on information generation and use. Lamb had been familiarized with Liberty's Employee Handbook of Policies and Procedures, informed about Liberty's electronic information practices, educated regarding Liberty's document retention practices, and familiarized with the "Legal Holds" to which Lamb was subject as an employee engaged in certain matters that became the subject of litigation. On April 20, 2018, Lamb executed a Confidentiality Agreement requiring him to keep confidential all of the business, financial and/or proprietary information regarding Liberty and its Board of Trustees to which he was exposed. In the overall, Lamb was informed in various ways of the limits that LU had carefully placed on the authorized use of any Liberty materials. Lamb has been directly advised about the requirements to protect Liberty's confidential information and property, and about the obligation to return Liberty's property at the cessation of his employment.

In order to make plain to Lamb his obligations, on October 22, 2021 Liberty emailed to you a letter that I generated and signed. It is attached hereto as Exhibit A. This letter summarized Lamb's duties with respect to document control and information security. That letter was also sent to Lamb directly by U.S. and registered mail.

Regarding the retained materials belonging to Liberty that are under Lamb's control, Liberty conveys to you five important points: (1) Liberty knows that Lamb has in his possession or control numerous LU materials that are properly the property of Liberty, and therefore Lamb has a duty to surrender documents and material to LU; (2) Liberty knows from his own disclosure that Lamb recorded various work meetings on a personal or Liberty device, and that Lamb is believed to have installed or had installed a program on his Liberty-issued lap top that diverted his work emails and other LU materials to Lamb's personal Verizon or other account. These tactics by Lamb – unauthorized and surreptitious in both instances – generated materials belonging to LU for which Liberty retains the full right to control and repossess. Liberty also knows that many of these emails and possibly some of these recordings contain communications that are attorney-client privileged and/or contain protected work product. Specifically, Liberty has viewed media articles that credibly cite Lamb as the source of materials that reflect advice and communications provided to LU by it in-house or outside counsel. Liberty has the exclusive right to determinate which of these retained materials are privileged and/or protected as work product, and does not acknowledge Lamb's actions as permissible or a waiver of Liberty's rights in the disclosed material; (3) Lamb, as a *former* employee of Liberty who generated and received materials that by principles of LU policy and common law belong to Liberty, no longer has the right to retain or disclose these potentiall-privileged materials, or even to make the determination in the first place if a given communication is attorney/client privileged or protected work product; (4) Even if Lamb

Ian E. Northon, Esq.
October 29, 2021
Page 3

was a participant in such communications or materials when created, the determination to regard a given document or item as privileged or protected work product, and the ability to disclose or not disclose such information to third parties *belongs to Liberty*; it does not in any way belong to Lamb. Without a prior order of the trial court clearing the way for the transfer, Lamb has no right to disclose externally or to his counsel any material that Liberty could deem privileged or work product protected had it inspected that material prior to such disclosure by Lamb; (5) It is still the case that Lamb cannot disclose the retained materials even if Lamb only gives those protected materials to your firm in its role as his legal counsel because you and your firm have no right to review Liberty's confidential communications, privileged material, or work product protected material without either of Liberty's prior permission or a specific court order.

Virginia case law is clear on the points of law detailed above. In *Lewis v. Capital One Servs.*, 2004 U.S. Dist. LEXIS 26978 (E.D. VA. 2004), for instance, a Capital One executive accumulated and controlled privileged material that she had collected while engaged in her duties for the company. In the ordinary course, she fed Capital One's documents to her legal counsel – Richmond, VA employment lawyer Harris Butler. Butler viewed the protected material and then utilized certain of them in preparing a lawsuit against Capital One. Butler's client was a plaintiff and potential class member identified in the claim. On objection by Capital One to plaintiff's disclosure of its privileged material to Butler, the trial court ruled that the Capital One executive did not have the right to control the determination of privilege in the first instance (a right inherently reserved to Capital One), and further did not have the right to transfer the protected materials and documents for review by her counsel, Butler. The trial court disqualified Butler from the case because his client had violated Capital One's right to control its privileged documents, and Butler failed to use sound discretion and wrongly participated in an unpermitted review of Capital One's protected materials.

In view of the above, please be advised of the following:

**First**, Liberty does not waive its lawful right to assert privilege and work product protection over any and all of the Liberty materials that are in the possession of Lamb (or, now, your firm); to the extent these materials were created or received by Lamb while he was an executive at Liberty and they are protected materials – a determination within Liberty's sole power to make – Liberty reasserts exclusive dominion over them;

**Second**, Liberty does not recognize any ability that you might claim as Lamb's counsel to make the determination of which among those Lamb-retained materials is privileged or work-product protected; Liberty has ceded to you or your firm no right to determine for Lamb which LU materials are and are not prohibited from outside disclosure without the express consent of Liberty, or even which materials controlled by Lamb at present actually belong to LU;

**Third,** Liberty waives no right to preclude your firm from reviewing any and all materials that belong to Liberty that are in Lamb's possession or contrrol;

**Fourth,** Liberty demands that Lamb, and you, produce voluntarily (and as soon as possible) all materials created or received by Lamb in the period in which he was within Liberty's

Ian E. Northon, Esq.
October 29, 2021
Page 4

employ, specifically from January 2, 2018 to October 6, 2021; in this regard, Liberty reiterates the demand issued to Lamb in my letter of October 22, 2021;

**Fifth**, in view of the foregoing, if you reject our demand to refrain from viewing any and all of LU's potentially confidential or privileged materials within Lamb's control, and instead you access and review any LU materials within the control or possession of Lamb, then Liberty asks that you create a privilege log (or other similar record) to capture all detail regarding those materials that you have viewed and are withholding from disclosure back to Liberty on the basis of a privilege or work product protection *claimed by Lamb personally.* Liberty will likely challenge your effort to contend any of the materials retained by Lamb were subject to a privilege held by any entity or person other than LU, but will provide you an opportunity, as officer of the court, to prove a claim of privilege unique to Lamb that is first properly logged;

**Sixth**, and finally, we ask that you log any materials Lamb generated or received while an LU employee that you are not producing back to Liberty because these materials appear to have been created by or disseminated to parties outside of Liberty, and thus do not facially meet (in your opinion) the criterion of a privileged or work product-protected document or communication. Liberty believes it has the sole right and privilege to control the ultimate classification of such materials and will challenge any waiver determination made by Lamb or his counsel regarding those of the Lamb-retained documents that are in a protected classification – especially given the constraints on your firm's ability to even view such material and/or make that determination in the first place.

Liberty's direction to your firm that your lawyers that they should capture and return LU's privileged and work product-protected materials in Lamb's possession is not an implied waiver of protection over the content of any of those materials and is not an invitation for Lamb to disclose the retained materials to his counsel for free and open content review. To the extent that any of those Lamb-retained materials are in fact privileged, then any merits evaluation of them undertaken by your firm could lead to an action by Liberty seeking your firm's disqualification, as well as a claim for damages or equitable relief, as applicable.

Please be advised that Liberty retains the sole right to manage the content of privileged documents even if Lamb communicates orally the content of those materials. Any dissemination, discussion, or other oral transmission of content by Lamb or his counsel is and will be regarded by LU as having the effect of a breach of duty owed by Lamb to LU, the sole owner of the privilege or protection at issue.

A final word about spoliation. In addition to the above caution regarding the unauthorized handling by counsel of the Lamb-retained LU documents and other retained materials belonging to Liberty, we also advise Lamb. and his legal team against the destruction, elimination, or deletion of any materials that have been or were created or received by Lamb during his term as a Liberty employee, including devices holding such materials. There is no doubt about Lamb's duty with respect to materials he generated, received, controlled, or had a duty to control. Because of numerous Legal Holds put in place during Lamb's tenure as a Liberty employee, Lamb was on clear and ample notice to preserve nearly everything that he generated or received during the

Ian E. Northon, Esq.
October 29, 2021
Page 5

performance of his responsibilities for Liberty. Lamb also agreed to explicit provisions that required him to preserve Liberty's confidential information, electronic property, and documents during his employment. Given all these conditions, Virginia law required Falwell Jr. to preserve all materials that he created during his tenure as an LU employee. Liberty reserves all rights and remedies as to any such emails, documents, or other materials that investigation or research determines Lamb or those under his control have improperly retired, deleted, destroyed, or otherwise manipulated.

If you care to confer regarding any of the issues identified above, please advise.

Yours sincerely,

Scott C. Oostdyk

cc: Thomas H. Roberts
Heidi Siegmund, Esq.

Enclosure

McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Scott C. Oostdyk
Direct: 804.775.4743

**McGUIREWOODS**

soostdyk@mcguirewoods.com
Fax: 804.698.2133

**VIA HAND DELIVERY**
Scott Lamb
1675 Austin Mill Road
Evington, Virginia 24550

October 22, 2021

    Re: **Return of Liberty University's Electronic and Physical Property**

Dear Mr. Lamb,

  I write at the request of our client, Liberty University, to remind you of certain obligations in connection with your recent separation from employment by LU.

  As part of your employment, you received access to confidential LU documents and information, including, without limitation, business plans, personnel, donor, alumni, and student information, financial information, strategies, marketing plans, and other proprietary information.  You also had the opportunity to access attorney/client privileged, confidential, proprietary, and other forms of sensitive information. As you were advised in LU's Employee Handbook, and by various LU policies and procedures, such information remains the property of Liberty University, even upon your departure and even when it was and is under your personal control. This is the case regardless of the form or medium of the documents, electronic records, or information (including, without limitation, e-mails, recordings, text messages, notes, and electronically stored information). All of these documents, communications, and things are and remain the property of Liberty University and cannot be retained, used, or disclosed by you without Liberty University's express consent.

  Liberty University's policy obligates you to return all such confidential information and all other LU documents, records, and other property upon the termination of your employment. As you may recall, you also are subject to, and have acknowledged, one or more currently applicable Legal Holds, which required you to preserve documents because of ongoing litigation impacting Liberty University. You are obligated for this reason, as well, to return all LU documents, recordings, and material to Liberty immediately upon your departure.  Therefore, to the extent you have not already done so, please immediately aggregate and return all of Liberty University's property still within your possession, including all documents, emails, hard copy documents, electronically stored data, recordings of LU personnel, recordings of matters involving LU personnel, and/or all other information created or obtained by you in the course of your employment with Liberty. Please arrange for the return of this material to LU on or before close of business on **Monday, October 25**.

If you have questions about the process of returning LU's property, about any documents that you have signed for LU, about the scope of the information that LU considers to be its property, about your compensation or benefits at separation, or, generally, about returning University property, please contact Laura Wallace, Executive Vice President of Human Resources, at ljwallac@liberty.edu // (434) 592-7330.

Liberty appreciates your service and appreciates in advance your efforts to have this routine process of aggregating LU property remain amicable. To the extent matters cannot be resolved timely, however, Liberty reserves the right to pursue all legal and equitable remedies available under Liberty's policies and applicable law. We point out those remedies can include monetary damages, an award to LU of its attorneys' fees as specified under Section 7.15 of Liberty's Employee Handbook, and preliminary and permanent injunctive relief.

Thank you for your anticipated cooperation.

Sincerely,

Scott C. Oostdyk

cc: Ms. Laura Wallace