**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| WALTER SCOTT LAMB, ) | |
|     Plaintiff/Counterclaim Defendant, ) | Case No. 6:21-cv-00055 |
| v. ) | Hon. Norman K. Moon |
| ) | |
| LIBERTY UNIVERSITY, INC., ) | |
| a Virginia corporation, ) | |
|     Defendant/Counterclaim Plaintiff. ) | |

**LAMB'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL
AND OVERRULE OBJECTIONS**

**I.     Introduction**

Liberty University, Inc. ("Liberty"), as usual, prefers to homilize to the Court about its grievances with Mr. Lamb instead of addressing the substance of the matters at issue. ECF Doc. 100 at 1-2. Realizing its relevancy and overbreadth objections are unsustainable, Liberty instead injects into this briefing improper, categorical arguments about privilege, without providing Mr. Lamb or the court a privilege log, as required by the Federal Rules, much less identifying any specific document it withheld and proving that it is privileged. ECF Doc. 100 at 3-6, 8-9; Fed. R. Civ. Pro. 26(b)(5)(A). It ignores the information presented in Mr. Lamb's brief and available in the record concerning the meaning of Mr. Lamb's allegedly defamatory statements, instead calling them "intentionally vague," marked with "imprecision." ECF Doc. 100 at 1-2. It tries to invent some new procedure where Mr. Lamb must make specific allegations in support of the statements he made before Liberty will deign to produce materials on the topic in discovery. ECF Doc. 100 at 10, 13. This is contrary to law. *See Webb v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 88, 752 S.E.2d 808, 811 (2014) (explaining that the plaintiff in a defamation case must provide an explanation of the facts demonstrating the alleged statement is actionable); *Union of Needletrades, Indus. & Textile Emples. v. Jones*, 268 Va. 512, 520, 603 S.E.2d 920, 924 (2004)

1

(noting it's the plaintiff's burden to prove the statement as they were published were factually false). And yet they disregard the allegations he has advanced in his brief. *Compare* ECF Doc 96 at 2-4, 9 (Lamb demonstrating that one of the allegedly defamatory statements concerned the Baker-Tilly investigation), *with* ECF Doc 100 at 6 (Liberty claiming "the [Baker-Tilly] documents Lamb requests are also irrelevant to this action" because "the *stated* [emphasis added] focus of the Investigation was on Liberty's 'business operations…during the tenure of" Falwell Jr.'").

## II. **Baker-Tilly Materials**

Liberty first attempts misdirection to hide the materials responsive in Request for Production 24, concerning materials from "the Baker Tilly investigation." ECF Doc. 96 at 9; ECF Doc. 96-1 at 12; ECF Doc. 100 at 3-7.

Liberty deliberately twists this request into being a request for information generated or collected by the law firm of Gentry Locke, instead of by consulting firm of Baker Tilly. Liberty misrepresents this request because it wants to claim the materials are protected by the attorney-client privilege, and it knows that it can't do that with respect to information communicated to consultants. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

In fact, a press release from Liberty dated October 20, 2020 states:

> Liberty University confirmed today that Baker Tilly US, a global forensic accounting firm, has commenced the comprehensive review of University business operations that was announced on August 31, 2020.  In an email to the University community, Liberty announced the launch of a website to facilitate the reporting of potential misconduct to the investigative team.
> The web-based portal is hosted on encrypted services.  It permits confidential submission of sensitive information from current and former Liberty University employees, contractors and business affiliates.  The website was developed and is hosted by a third-party vendor independent of Liberty University.
> ***Those with information they believe might be useful to the forensic investigation into potential misconduct in business operations of the University***

> ***and/or any improper decisions or actions by current or former members of University leadership**, are encouraged to visit the portal at https://lu.integrityline.org/index.php to learn more and file a confidential report.*
>
> To properly scope and timely complete the forensic investigation, the web-based platform will be available for submitting reports for sixty days (until December 20, 2020). The Liberty Board and the independent investigative team are encouraging anyone with pertinent information to not delay in submitting a report through the platform.
>
> Since the platform is independent of Liberty University, it is not a substitute for employees or students to report complaints of misconduct where the University has an established complaint procedure. Frequently asked questions about what should and should not be reported through the web portal can be found on the FAQ tab on the landing page along with other information on the process.
>
> The launch of the website represents the first public phase of the forensic investigation. Baker Tilly US has been quietly working on the investigation since early September, conducting interviews and collecting documents and other data.

*See* **Exhibit A** (emphasis added), available at https://www.liberty.edu/news/2020/10/20/liberty-reveals-forensic-investigation-firm-and-launch-of-website-https://www.liberty.edu/news/2020/10/20/liberty-reveals-forensic-investigation-firm-and-launch-of-website-for-reporting-misconduct/for-reporting-misconduct/. There is no mention here of a law firm. Only an accounting firm.

Liberty's press statement explaining that the portal was for reporting "any improper decisions or actions" was widely covered in the press. *See, e.g.,* **Exhibits B and C**. And a press story (**Exhibit D**) and a tweet (**Exhibit E**) confirm that at least one former student reported sexual misconduct through the portal and received no response—which is all consistent with Lamb's allegation that the Title IX allegations submitted to Baker Tilly were not looked into.

Liberty's press release undermines the claim that the materials acquired in the investigation were attorney-client materials, and it damages the claim that these are covered by the work product privilege. First, Baker Tilly was not legal counsel, but a consulting and forensics firm. Second, the information revealed to Baker Tilly was not coming solely from

3

current employees of Liberty, but also from "former Liberty University employees, contractors and business affiliates." Additionally, because the portal was publicly advertised, the Court cannot presume that third parties did not communicate through the portal. Nor can the court presume that the materials did not concern Title IX, merely because this platform "is not a substitute" for reporting to the college. After all, this portal concerns "any improper decisions or actions by current or former members of University leadership." This would include Title IX violations.

Third, Liberty advertised this platform as "independent of Liberty University." It cannot be independent of Liberty University and protected by Liberty's attorney-client or work-product privilege. Fourth, the materials from the portal would be fact work product, not opinion work product, subject to lower protections. *Smith v. Scottsdale Ins. Co.*, 621 F. App'x 743, 746 (4th Cir. 2015).

And the materials from the portal are not the only materials that would be available. "Baker Tilly US has been quietly working on the investigation since early September, conducting interviews and collecting documents and other data." **Exhibit A**. The information protected is not protected by attorney-client privilege, and at best it is only fact work product, not opinion work product.

Moreover, this motion only concerned objections based on scope, relevance, and proportionality as to these materials. ECF 96 at 7. But Liberty has chosen to inject privilege into the discussion. It has failed to meet its burden to prove that the elements of attorney-client or work product privileges apply to any particular document, and failed to show the privileges have not been waived or breached. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998); *United States v.*

4

*Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). After all, "The mere relationship of attorney-client does not warrant a presumption of confidentiality." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984). Further, by failing even to produce a privilege log, as required by Fed. R. Civ. Pro. 26(b)(5)(A), even as it injects the issue into the motion for a decision, Liberty has waived the privileges that may attach. *See Chevron Corp. v. Page (In re Naranjo)*, 768 F.3d 332, 339 (4th Cir. 2014) (discussing *In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) and *In re Chevron Corp.*, 749 F. Supp. 2d 170, 182 (S.D.N.Y. 2010), *aff'd Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 395 (2d Cir. 2010)).

Liberty also argues that the request is disproportionate to the needs of the case and irrelevant to this action. In the interests of reaching a resolution, Lamb is willing to limit Request for Production 24 to any responsive materials *related to allegations of sexual assault, sexual harassment, sexual discrimination, or discrimination or harassment based on sexual preferences*. Liberty's conclusory denials that Baker-Tilly received information of this nature are unsubstantiated, and moreover they are unpersuasive in light of the published reports of a victim. **Exhibits D and E**.

Narrowed in this way, the request is not overbroad. Liberty has sued Lamb for defamation because Lamb said that Lamb told a University vice president, after Lamb's termination, that the Title IX violations reported to the Baker-Tilly investigation had not been looked into. ECF Doc. 10 at 21-2; ECF Doc. 30-1 at 15:18-21, 16:8-14, 16:20-17:18, 18:16-19:11, 20:9-18, 20:21-21:8-9, 21:14-22:21; ECF Doc. 96 at 1-4. Evidence that the Baker Tilly investigation received Title IX complaints supports Lamb's defenses to this defamation action that the statement was substantially true, or that he did not make the statements with the requisite

5

defamatory intent. Evidence of whether the Baker Tilly investigation did communicate that information to the University is likewise relevant.

Liberty claims that this request is not subject to time limitations, but Liberty's engagement letter with Baker-Tilly (ECF Doc 100-2) and its press release (**Exhibit A**) shows the absurdity of this objection. Liberty engaged Baker-Tilly on August 31, 2020, and the investigation began in September 2020. The materials will not pre-exist the first contact with Baker-Tilly. Liberty misleadingly claims the "focus" of the investigation was on business matters, not on Title IX maters, but if so, there will be less materials responsive to the request under the above limitation.

Liberty tries to assure the Court that "Liberty has never advanced (and never will advance) any materials related to the Investigation as offensive proof that Liberty was investigating Title IX allegations in that Investigation." Of course Liberty won't! Liberty will continue to pretend that it never received any Title IX allegations through the Baker-Tilly portal, despite published reports to the contrary. **Exhibit D and E.** But this motion is about the defensive use of that information, so that Liberty's continuous conclusory denials will be inconveniently rebutted with the truth.

Lamb has a right to access, through discovery, the evidence that some people did in fact submit to the Baker-Tilly investigation information pertaining to Liberty-related sexual assault, sexual harassment, sexual discrimination, or discrimination or harassment based on sexual preferences, and that these allegations were not "looked into," or at least that Lamb was not acting with the requisite intent.

The Court should overrule these objections and compel production.

### III. Convocation Speech Materials

Liberty next addresses Request for Production 14, concerning the October 1, 2020 convocation speech of President Prevo. Liberty first tries to twist a ruling on Liberty's Rule 12(b)(6) motion concerning the inadequacy of Lamb's Title IX retaliation complaint into a binding conclusion of law and fact that covers Liberty's defamation claim against Lamb. It claims that because The Court ruled the amended complaint did not establish that Lamb's comments about a speech were Title IX protected activity, the materials are irrelevant to Liberty's defamation claim against Lamb. That logic is incongruous and, at best, highly cynical.

Liberty accuses Lamb of defamation based on the conclusory allegation that "Lamb falsely stated that he was fired for reasons related to Title IX." ECF Doc. 10 at 21. But stating that one was fired for "reasons related to Title IX" is not the same as stating that one had engaged in Title IX protected activity, much less stating that one adequately stated a Title IX retaliation claim. The Court did not conclude dispositively for this case that the speech had nothing to do with Title IX, or that Lamb was not fired for his objections to the speech. Quite the contrary, the Court stated the following:

> Lamb's allegation with respect to the convocation speech is an improvement in that it at least provides some factual detail. We are told that Lamb sought to make the speech more respectful of victims of sexual assault in various ways. However, opposing the speech as written could constitute protected activity only if it was reasonable to believe that the speech as written discriminated on the basis of sex in violation Title IX.
> . . . .
> Even assuming such a speech could constitute deliberate indifference to sexual harassment, the limited factual allegations provided by Lamb do not render it reasonable to conclude that it did so here. . . .
> To be clear, this memorandum opinion is not a comment on Liberty's compliance with Title IX. Only a finding that Lamb has not alleged facts stating a Title IX claim as to him. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (noting the longstanding rule that "extrinsic evidence should not be considered at the 12(b)(6) stage").

7

ECF Doc. 67 at 9-11. Liberty deliberately misrepresents both the content and the legal significance of the Court's ruling in order to withhold these communications concerning a Title-IX related dispute between Lamb and other Liberty personnel in the week before Liberty fired Lamb. Its arguments are specious, and Liberty knows that.

In fact, Lamb has alleged, that on or about September 30, 2021, Lamb reviewed a speech President Prevo was to deliver at the Liberty University convocation on October 1, 2021, a speech that would address Title IX issues. ECF Doc. 17 ¶¶ 40-45. Liberty claims, "President Prevo sought legal input into his remarks, and Lamb was there because it involved public communications." ECF Doc. 12 at 17. Lamb objected to the approach the speech took as a public statement about Liberty's treatment of Title IX issues, and Liberty later altered the remarks. ECF Doc. 17 ¶¶ 40-45; ECF Doc. 12 at 17. President Prevo's office, in a press release, acknowledged the statement Prevo eventually made at the convocation addressed Title IX concerns arising from the *Jane Doe 1-12 v. Liberty University* lawsuit. That press release, issued after Lamb's termination, stated:

> Later, when Liberty University's residential students began to express their own concern about the allegations in the lawsuit, I stood *myself* in front of the Convocation audience and directly addressed their concerns by saying, *"We want you to feel safe. We don't want any sexual harassment or sexual abuse. I don't, and I've told the department that deals with that. I said, 'You take every complaint seriously, and you deal with it seriously."*

Exhibit F (emphasis in original), available at https://www.liberty.edu/news/2021/10/26/prevo-responds-to-public-interest-in-title-ix-case/. Lamb believes his objections to the initial convocation remarks concerning this exchange about intended Title IX remarks was a factor motivating his termination, and Liberty claims that Lamb defamed it by implying he "was fired for reasons related to Title IX." ECF Doc. 17 ¶¶ 40-45. ECF Doc. 10 at 21.

A jury may reasonably believe Lamb's advocacy concerning this convocation speech, which was directed to President Prevo and others on an issue related to Title IX (ECF Doc. 102-2), influenced Liberty's decision to terminate Lamb. This would make the alleged defamatory statement—that Liberty terminated Lamb for reasons related to Title IX—true or substantially true. *See* ECF Doc. 10 at 21; *Schaecher v. Bouffault*, 290 Va. 83, 91-91, 772 S.E.2d 589, 594 (2015); *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956); *Jordan v. Kollman*, 269 Va. 569, 575-76, 612 S.E.2d 203, 206-07 (2005). But even if this advocacy was unrelated to the termination, the document would still be relevant to whether Lamb spoke the allegedly defamatory statement with the requisite intent. Va. Code § 8.01-223.2(A); *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 42, 624 S.E.2d 63, 70 (2006); *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 2696 (1989). Either way, the documents would be relevant and discoverable. Fed. R. Civ. Pro. 26(b)(1).

As to the assertion of the attorney-client and work product privileges, Liberty withheld the privilege log for these requests for production until after this motion was filed (see ECF Doc. 96 at 12), and so the privilege issues on this request are addressed in a separate motion. ECF Docs. 101-102. And, contrary to Liberty's misrepresentation of law, Lamb does not "carry the heavy burden . . . to overcome these protections." **Liberty**, not Lamb, bears the burden of proving the privilege applies to each document they withhold. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). "The mere relationship of attorney-client does not warrant a presumption of confidentiality." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984).

The Court should overrule these objections and compel production.

### IV.     Title IX Policies, and Identity of Responsible Individuals

Liberty next claims that Title IX policies and procedures, and the identity of individuals responsible for receiving, investigating, and processing Title IX complaints, are irrelevant to this defamation claim—a claim concerning whether the incidents reported to the Baker Tilly investigation were "looked into," whether Lamb had been discussing the "Jane Doe Kathy" Title IX matter "all spring," and whether Lamb was terminated for reasons related to Title IX. *See* ECF Doc. 96 at 1-5.

Liberty claims "Lamb does not even try to explain how any of this information would be relevant." Apparently, Liberty chooses to ignore page 10 of the brief in support. ECF Doc. 96 at 10. Liberty claims, "Lamb has never even alleged that *any* employee in Liberty's Office of Equity and Compliance has any knowledge about his defenses to Liberty's claims." But: (1) Lamb is a defendant in this defamation claim; he doesn't need to plead his allegations; and (2) apparently, Liberty chooses to ignore paragraphs 58 and 59 of the proffered second amended complaint. ECF Doc. 72-1 ¶¶ 58-59.

Liberty states, "If Lamb thought a particular employee in Liberty's Title IX office had not appropriately 'looked into' a particular Title IX allegation, and requested documents pertaining to his own involvement in pressing such an allegation, that might be a different matter." How can Lamb point out what particular employee was supposed to look into a particular violation without (1) the policies; (2) the identity of the employees responsible for doing so; and (3) further discovery about whether those people in fact looked into the allegations? Liberty demands Lamb to prove the truth of his statements without discovery, as a prelude to discovery, while Liberty continues simply to deny the truth of Lamb's statements and call it competent evidence.

Furthermore, Liberty's footnote 5 proves the relevance of the materials concerning policy changes. ECF Doc. 100 at 10. Liberty acknowledges there were "major changes" to Title IX in 2020 requiring "a significant overhaul to Title IX procedures," and that

> between September 2017 and January 2022, the U.S. the U.S. Department of Education withdrew various guidance documents concerning Title IX, later issued proposed rules for Title IX and even later formally enacted Title IX rules that differed considerably from the proposed Title IX rules, inevitably generating extensive discussion and documentation regarding preparation, implementation, revision, amendment, and alteration of university policies concerning Title IX.

Despite this, Liberty sues Lamb for saying he was discussing Title IX issues "all spring" in 2021, calling this an "objectively false" statement. ECF Doc. 10 at 22. Despite the evolving standard, Liberty sues Lamb for suggesting that Title IX issues that were not "looked into" should have been looked into. ECF Doc. 10 at 21-22. The "extensive discussion and documentation regarding preparation, implementation, revision, amendment, and alteration of university policies concerning Title IX" will help to show that Lamb did not defame Liberty by his comments, or he lacked the requisite intent. It is not adequate, simply for the jury to have a policy that says, "Updated **_August 14, 2020_**" (ECF Doc 100-4) (emphasis added), as if it were the final and definitive word on the subject, when Liberty now admits there was extensive discussion and documentation regarding preparation, implementation, revision, amendment, and alteration of university policies concerning Title IX **_from September 2017 to January 2022_**. The evolving status of the law, as evidenced by these communications, are evidence that Lamb's statement were true or that he lacked the requisite intent.

The Court should overrule these objections and compel production.

### V.     Title IX Correspondences

Finally, with respect Lamb's Title IX-related communications, Liberty admits "that some of the requested information may be relevant to disprove Lamb's defamatory implication that Liberty fired him in relationship his Title IX advocacy." ECF Doc. 100 at 11.

This admission is substantial to this motion, because Federal Rule of Civil Procedure 34(b)(2)(C) states, "An objection to part of a request must specify the part and permit inspection of the rest." Instead of complying with this rule with respect to Requests for Production 6, 10, 11, and 19, on each request, Liberty previously stated the information was "not relevant" and declared it was "not producing documents based on its objections to this Request." ECF Doc. 96-1 at 5, 7, 10.

Liberty now wants to limit the scope of the requests to January 1, 2021, instead of January 1, 2020, with the assertion that "nowhere has Lamb claimed that (1) he complained about any Title IX-related issues in 2020; or (2) that any incidents occurred in 2020 that he believes precipitated his firing." ECF Doc. 96 at 11. But this defamation claim does not simply concern Lamb's *complaints*; it concerns what he *knew or believed* at the time he made the statements. This defamation complaint likewise does not simply concern what Lamb *"believes"* precipitated his firing, but what *actually* precipitated his firing. And, in fact, Lamb has consistently alleged a pattern of events going back to at least Jerry Falwell, Jr.'s resignation for sexual improprieties in August 2020, ECF Doc. 1 ¶ 24 et seq.; ECF Doc. 17 ¶ 24 et seq.; ECF Doc. 72-1 ¶ 34 et seq. The Baker-Tilly investigation began by about August 31, 2020. ECF Doc. 100-2; Exhibit A.  Lamb was communicating with the media concerning these issues before Falwell's resignation. ECF Doc. 72-1 ¶ 34.

As before, Liberty also tries to minimize Lamb's involvement in Title IX issues. It claims that in 2020, "for Lamb, Title IX simply did not come up." ECF Doc. 100 at 11. But if so, this request is not burdensome. If so, discovery is more important, not less, to prove the truth of his statements if he lacked personal knowledge. But in fact, Liberty is again merely trying to influence the Court's perspective in a setting where it is free to bloviate without evidence. Lamb was the spokesperson for the University in the midst of extreme media scrutiny of Liberty's Title IX policies and practices from 2020 to his termination in October 2021. His correspondences will show his extensive involvement in communicating to the public about Title IX issues, beginning before August 2020, and his opposition to both false and insensitive messaging. This will show that he was not acting with the requisite intent by implying that he was terminated for reasons related to Title IX. This will show that he was not acting with the requisite intent when he said the Title IX allegations to Baker Tilly had not been looked into, and that he was speaking to Title IX compliance issues all spring in 2021.

Liberty complains that Lamb has requested materials related to communications with those "in charge of Title IX compliance from January 1, 2020 to present." Liberty claims that this involves "thousands of other Liberty employees." ECF Doc. 100 at 12. (Yet somehow Liberty knows that "for Lamb, Title IX simply did not come up" (ECF Doc. 100 at 11). These contradictory, sweeping claims demonstrate the need for discovery, because Liberty feels comfortable reaching conclusions without facts.) But Lamb is willing to clarify that he intended the scope of the request to cover the Office of Equity and Compliance, the Office of Legal Affairs, the Office of Human Resources, and any predecessor or successor offices, the employees of such offices.

Liberty likewise claims that the request for documents constituting or referencing correspondences between himself and any employee or agent of Liberty University referencing Title IX is overly broad, but Liberty can engage in reasonable efforts to collect this information. Its IT department can search Lamb's sent- and received-emails from the text strings "Title IX." It can search the emails of other employees for the text string "Title IX" with "Lamb" or with his email account, to captured forwards and other communications. Since Liberty apparently has no protocol for archiving Liberty-related text messages and other materials, it would have to ask its employees for responsive records they have. This is not unduly burdensome given that Liberty launched this countersuit to defend its apparently fragile reputation.

Finally, Liberty tries to persuade this Court that Lamb should only have access in discovery to the information about Title IX incidents he can specifically identify without discovery. ECF Doc 100 at 13. But that is inconsistent with the nature of a defamation claim under Virginia law. In Virginia, the intent and knowledge of the party is only one element of the defamation claim. But a separate element is the truth or falsity of the allegations as they would be "reasonably understood in accordance with the usual construction and common acceptation of the meaning of the words as used." *See White v. White*, 129 Va. 621, 630, 106 S.E. 350, 352 (1921). Since Lamb kept his statements general (and, according to Liberty, was "intentionally vague in those interviews" (ECF Doc. 100 at 1)), Liberty has to prove the falsity of the general statement, not the falsity of some hypothetical statement Lamb may have made if Lamb had chosen to speak with more specificity. Lamb is entitled to discover any facts tending to prove the truth or falsity of the statement that he made, not simply the truth or falsity of beliefs Lamb had in mind when he made the statements.

The Court should overrule these objections and compel production.

## VI. Conclusion

For these reasons, Lamb respectfully requests the Court to overrule these objections and require Liberty to produce the materials and answer requested in Lamb's Requests for Production 6, 7, 10, 11, 14, 19, and 24, and Interrogatory 18, and all such further relief as may be appropriate, including attorney fees pursuant to Federal Rule of Civil Procedure 37.

Respectfully submitted,
WALTER SCOTT LAMB

THOMAS H. ROBERTS & ASSOCIATES, P.C.
By: /s/ Andrew T. Bodoh, Esq.
Thomas H. Roberts, Esq. (VSB 26014)
tom.roberts@robertslaw.org
Andrew T. Bodoh, Esq. (VSB 80143)
andrew.bodoh@robertslaw.org
105 South 1st Street
Richmond, Virginia 23219
Tel: 804-783-2000
Fax: 804-783-2105

Ian A. Northon, Esq.
*Admitted Only Pro Hac Vice*
Michigan—P65082
Pennsylvania—207733
Florida—101544
Northon Law, PLLC
4850 Tamiami Trail N, Ste 301
Naples, FL 34103
ian@northonlaw.com
service@northonlaw.com
(239) 784-7940

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2022, I presented the foregoing document(s) to the Clerk of the Court for filing and uploading to the CM/ECF system, which will provide electronic notice and copies of such filing(s) to counsel of record.

Case 6:21-cv-00055-NKM-RSB Document 103 Filed 07/20/22 Page 16 of 16 Pageid#: 2306

...

        THOMAS H. ROBERTS & ASSOCIATES, P.C.
        By: /s/ Andrew T. Bodoh, Esq.
        Thomas H. Roberts, Esq. (VSB 26014)
        tom.roberts@robertslaw.org
        Andrew T. Bodoh, Esq. (VSB 80143)
        andrew.bodoh@robertslaw.org
        105 South 1st Street
        Richmond, Virginia 23219
        Tel: 804-783-2000 / Fax: 804-783-2105
        ATTORNEYS FOR PLAINTIFF