IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| WALTER SCOTT LAMB, | ) |
| | ) |
|     Counterclaim Defendant, | ) |
| | ) |
| v. | )   Civil Action No. 6:21-cv-55 |
| | ) |
| LIBERTY UNIVERSITY, INC., | ) |
| | ) |
|     Counterclaim Plaintiff. | ) |

**LIBERTY UNIVERSITY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SCOTT LAMB'S MOTION TO COMPEL PRODUCTION CONCERNING CONVOCATION SPEECH MATERIALS**

Liberty University, Inc. ("Liberty"), by counsel, submits as follows in opposition to Scott Lamb's ("Lamb") Motion to Compel Production Concerning Convocation Speech Materials (ECF No. 101):

## INTRODUCTION

In his latest motion to compel, Lamb asks this Court to compel production of documents that Judge Moon has already ruled to be privileged. Specifically, Lamb seeks all documents related to the preparation of a speech that acting President Jerry Prevo gave on October 4, 2021, in which Prevo addressed the pending *Jane Does* litigation. (RFP No. 14.) Lamb presents no new information or persuasive argument to overbalance Judge Moon's determination of privilege. The material Lamb seeks is also opinion work product, and he has not borne the high burden of substantial need necessary to free it from protection. The context surrounding the speech shows that all documents and communications related to the preparation thereof are both attorney-client privileged and work product protected.

1

The context of the subject communications is as follows. On July 20, 2021, a group of former Liberty employees and students filed a lawsuit against Liberty (the "*Jane Does* litigation"). In direct response to the pending *Jane Does* litigation, Liberty's General Counsel David Corry prepared a draft speech for acting President Prevo to deliver at Liberty's October 1, 2021 convocation. General Counsel Corry prepared the draft remarks specifically to address Liberty's legal response in the wake of the *Jane Does* litigation. After Mr. Corry finished the draft, he circulated the communication to a small group of reviewers, including other in-house counsel, external counsel, and Liberty employees, including Lamb. As one of these reviewers, Lamb read Corry's draft remarks and prepared a memorandum in response to Corry about his conception of the *Jane Does* litigation. Lamb's only complaint was that the speech "was misleading and lacked 'empathy' and 'transparency.'" Lamb offered no basis to believe that the speech "discriminated on the basis of sex in violation of Title IX." (ECF No. 67 at 9-10.) Other members of the group, including the external counsel Liberty hired to represent it in the *Jane Does* litigation, the law firm of Saul Ewing, commented on the speech too, and addressed Corry's proposed legal strategy in an email chain. Ultimately, after collective input guided by Corry, acting President Prevo did not use the draft remarks that Corry had prepared. Instead, he offered general remarks about Liberty's dedication to creating a campus environment free from sexual discrimination and harassment.

Thus, it is clear that the draft speech outline, which Liberty *never* allowed to become public, and all its attendant documents and communications, are integrally related to the *Jane Does* litigation. Indeed, but-for the *Jane Does* litigation, neither the draft speech nor the subsequent communications would exist. Accordingly, all documents and communications

relating to the October 1, 2021 draft speech are attorney-client privileged and work product protected. This Court should accordingly deny Lamb's motion.

## ARGUMENT

Lamb's motion centers around RFP No. 14. Lamb seeks:

All documents, materials, and things, including electronically stored information, pertaining to the October 1, 2020 convocation speech of President Prevo, including all documents pertaining to any draft versions of a speech for the occasion that he elected not to give.

This Court should deny Lamb's motion to compel them for three reasons. First and most importantly, Judge Moon has *already* ruled many of these documents to be attorney-client privileged. There is no basis for Lamb to unseat Judge Moon's ruling. Second, all of the documents surrounding President Prevo's October 1 speech have been determined by Judge Moon to be attorney-client privileged. Third, Judge Moon has already ruled that the focal documents are work product, and Lamb has not sufficiently shown that he has substantial need for them, as courts construe that term.

**I.      This Court has already ruled these documents privileged.**

In December 2021, Liberty moved for a preliminary injunction to recover property Lamb wrongfully withheld after his termination in October 2021. (ECF No. 11.) To aid the Court in anticipation of the injunction hearing, Liberty filed a Motion to Seal and for In Camera Review ("*In Camera* Motion") of several documents purloined by Lamb. (ECF No. 31.) Judge Moon granted Liberty's *In Camera* Motion and issued an oral order "finding that the documents contain privileged information." (ECF No. 38.)

Among the documents that Judge Moon previously ruled privileged are some of the very same documents Liberty has withheld on its privilege log in response to Lamb's RFP No. 14.

3

For example, Documents 3, 7, 15, and 16[1] are the same as Exhibit B to Liberty's *In Camera* Motion*—*the memorandum drafted by Lamb to respond to the draft speech prepared by General Counsel Corry regarding the pending *Jane Does* litigation. (*See* ECF No. 31-3.) Similarly, Documents 1 and 2 are merely different versions of the draft remarks prepared for President Prevo by Corry that this Court already ruled privileged. They were labeled as Exhibit C to the *In Camera* Motion. (*See* ECF No. 31-4.) Documents 4, 6, 11, and 14 match up with Exhibit D—an email chain Lamb sent to in-house counsel, external counsel, and other Liberty employees regarding the draft speech prepared by Corry. (*See* ECF No. 31-5.) Finally, Documents 5, 8, 9, 10, 12, and 13 are different parts of the email thread in Exhibit D that Judge Moon already found to be privileged.

Nothing about the privileged nature of these documents has changed since December. Therefore, this Court need only rest on its earlier ruling to deny Lamb's motion to compel.

## II. All of the documents are protected from disclosure by the attorney-client privilege.

As explained at the December injunction hearing, and during the parties' June 8 call with Judge Ballou, all documents and communications at issue are protected by the attorney-client privilege.

General Counsel Corry crafted the comments in the initial version of the remarks. He created Liberty's response therein to the *Jane Does* litigation and associated social media activity. As a formative and preliminary expression of Liberty's legal strategy, the document is privileged. Indeed, a draft document prepared by counsel in response to litigation is presumptively attorney-client privileged and work product, regardless of whether some other

---

[1] In the interests of consistency, Liberty will adopt the document numbering system used by Lamb in his motion (*i.e.*, Document 1, Document 2, etc.) rather than use the lengthy file names included on Liberty's privilege log.

4

version of that document eventually reaches the public. *E.g.*, *Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30, 2018) (finding that a draft press release about pending litigation and related communications were both privileged and work product); *see also Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) (noting that "most courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact"). *Cf.* (ECF No. 37 at 3) ("Public interest favors the protection of internal communications and iterative work product. Universities cannot function without confidence that their internal communications, especially on sensitive issues, will be kept in confidence.") It is uncontroverted that Corry's initial draft of the *Jane Does* response speech *never* became public.

Not only are the drafts themselves protected, but communications to and from Liberty's counsel concerning the strategic direction of the draft speech are likewise protected. *Cf. In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 330-31 (S.D.N.Y. 2003) (finding communications between counsel and communications consultants privileged and work product because lawyers needed to be able to obtain advice "as to whether and how possible statements to the press—ranging from 'no comment' to detailed factual presentations—likely would be reported in order to advise a client as to whether the making of particular statements would be in the client's legal interest").

With no factual support, Lamb attempts to contend Liberty lost privilege because Corry was acting not as a lawyer but rather "as a press advisor in a media campaign…." (ECF No. 102 at 12.) In addition to lacking evidence, this argument greatly discounts the broad responsibilities that courts have come to expect of modern attorneys. In the information age, "[a]n attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications

5

of a legal proceeding for the client. Just as an attorney may recommend a plea bargain or civil settlement to avoid the adverse consequences of a possible loss after trial, so too an attorney may take reasonable steps to defend a client's reputation…" *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043 (1991). Any public statements Prevo made about the *Jane Does* litigation could have been used against Liberty in that litigation, so the potential legal consequences of those statements were significant. As such, the draft speech, and related communications, necessarily incorporated Liberty's counsel's legal analysis of those potential legal consequences.

Furthermore, Lamb argues that several of the documents (e.g., Documents 2, 5, and 8) are not privileged because there "is no indication that counsel participated in these particular communications." (ECF No. 102 at 15.) This attack fails. It is well-established that "[t]he attorney-client privilege may attach to communications between nonlegal employees where…the employees discuss or transmit legal advice by counsel." *Dolby Lab. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *see also Deel v. Bank of America, N.A.*, 227 F.R.D. 456, 460 (W.D. Va. 2005) ("A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege."); *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 379–80 (N.D. Ill. 1999) (noting that "conversations among the [employees] discussing their attorney's legal advice about potential litigation risk and legal strategy are privileged under the attorney-client privilege"); *Santrade, Ltd. v. General Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) (noting "documents subject to the privilege may be transmitted between non-attorneys…so that the corporation may be properly informed of legal advice and act appropriately"). This is precisely the case with many of the documents at issue. For example, the privilege log

description for Document 2 reads "[d]iscussion between Scott Lamb and Jonathan Falwell of remarks drafted by in-house counsel regarding response to pending litigation." Similarly, Document 12 is an "[e]mail from Scott Lamb to Ryan Helfenbein forwarding discussion about remarks drafted by in-house counsel for the purpose of responding to pending litigation." Thus, these communications (and Documents 3-8, 11, and 13-16) between nonlegal Liberty employees are nevertheless privileged because they involve discussion and transmittal of the legal advice and strategy offered by General Counsel Corry.

Lamb also argues that he is entitled to many of the documents (Documents 2-4, 6, 7, 11, and 14-16) because they "incorporate[] statements by, or communications with, Scott Lamb, so the privileges do not apply." (ECF No. 102 at 15.) The alleged basis for Lamb's argument is Federal Rule of Civil Procedure 26(b)(3)(C), which allows a person to obtain his previous statement in certain circumstances. Specifically, FRCP 26(b)(3)(C) only allows a person to "obtain the person's own previous statement *about the action or its subject matter*." (emphasis added). As such, the rule does not entitle a party to statements that do not concern the action or its subject matter. *See Cox v. Allstate Ins. Co.*, 2009 WL 10668691, at *2 (W.D. Okla. Jan. 9, 2009) ("Moreover, because Request No. 38 is not limited to the subject matter of this action, it is not governed by Fed. R. Civ. P. 26(b)(3)(C)."). Here, any documents that allegedly contain Lamb's previous statements do not concern this action or its subject matter. Lamb's only complaints about the draft speech were entirely stylistic and tonal in nature. He made no substantive statements related to Title IX that are relevant to either his claim[2] or Liberty's counterclaims. Thus, FRCP 26(b)(3)(C) does not apply, and Lamb is not entitled to production

---

[2] Lamb does not have a claim currently pending against Liberty. This Court dismissed Lamb's First Amended Complaint on March 10, 2022, leaving Liberty's counterclaims against Lamb the only live claims in this action. (*See* ECF No. 68.)

of these privileged documents. *See Thompson v. U.S. Justice Dept.*, 2021 WL 6332676, at *14 (E.D. Va. Mar. 19, 2021) ("The Court further finds that Federal Rule 26(3)(C) does not entitle Plaintiff to the redacted documents in question, because the statements contained in the documents in question do not involve Plaintiff's prior statements regarding "th[is] action or its subject matter").

Finally, Lamb argues that Liberty has waived its attorney-client privilege for the documents at issue. Lamb tortures logic and the law. "Waiver of the attorney-client privilege can be either expressed or implied." Lamb baldly claims that Liberty "implicitly waived the privileges." (ECF No. 102 at 13.) The Fourth Circuit has stated that "implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege." *In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003); *see also Hanson v. U.S. Agency for Intern. Dev.*, 372 F.3d 286, 294 (4th Cir. 2004) ("Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter to a party not covered by the privilege.") (emphasis in original). Here, Liberty never disseminated the initial draft of the speech or the attendant communications outside of the confidential circle of drafters and reviewers. This circle included in-house counsel, external counsel, and high-level Liberty employees—all individuals embraced within Liberty's attorney-client privilege.

In a most curious accusation, Lamb argues also that Liberty "waived the privileges by filing this suit.". (ECF No. 102 at 16.) He offers no explanation to support this conclusory allegation. A party may impliedly waive the attorney-client privilege by "assert[ing] a claim or defense, and attempt[ing] to prove that claim or defense by *disclosing or describing an attorney client communication*." *Navient Sols., LLC v. Law Offices of Lohman*, 2020 WL 6379240, at *3

8

(E.D. Va. June 12, 2020) (emphasis in original). But Liberty has neither disclosed nor described the documents or communications surrounding the draft speech in an effort to prove its claims or defenses. *See Navient*, 2020 WL 6379240, at *3 (finding plaintiff "did not impliedly waive its attorney-client privilege because it has not disclosed or described any attorney-client communications in support of [its] claims"). Lamb is the party that attempted to use privileged information to support his claim, by injecting privileged material into his since-dismissed First Amended Complaint in direct violation of Liberty's privilege. (*See* ECF No. 17 at ¶¶ 40-44.) Of course, Lamb cannot unilaterally waive *Liberty's* privilege. *Cf. QBE Ins. Corp. v. Griffin*, 2009 WL 2913478, at *4 (M.D. Ala. Sept. 4, 2009) (observing that the "attorney-client privilege belongs to the client" and that "[i]t is only [the client] who can waive the privilege").

Accordingly, all of the documents and communications surrounding the draft October 1, 2021 speech are attorney-client privileged and protected from disclosure. For this reason, the Court should deny Lamb's motion.

### III. The documents are also protected work product, and Lamb does not have substantial need for these documents.

In addition to privilege, the documents at issue are also protected by the work product doctrine. Lamb argues, without support, that the draft speech was "prepared in the ordinary course of business, not 'in anticipation of litigation or for trial'." (ECF No. 102 at 13.) The factual background surrounding the creation of the draft speech flatly belies Lamb's claim. General Counsel Corry prepared the draft speech specifically to address Liberty's actions in the wake of the *Jane Does* litigation. But for the pending *Jane Does* litigation, the draft speech and subsequent communications would not exist. The "Fourth Circuit has held that such work product documents do not lose their protection in subsequent and unrelated litigation." *Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 430 (E.D.N.C. 1991) (citing

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir.1973)). Additionally, a draft document prepared by counsel in response to litigation is work product, even if some other version of the document eventually becomes public. *See ePlus Inc. v. Lawson Software, Inc.*, 2012 WL 6562735, at *5 (E.D. Va. Dec. 14, 2012) (collecting cases finding that "draft documents, although prepared for public consumption, can constitute work product").

It is critically important that many of the subject documents are opinion work product. Opinion work product—the seminal and foundational construction of a lawyer-led team's thoughts, values, strategies, and expressions—"enjoys near absolute immunity from discovery." *E.I. Dupont*, 269 F.R.D. at 608. While the rules required Lamb to assert and prove "substantial need" in order to access fact work product, "opinion work product is not available under a showing of substantial need." *Id.* at 609; *see also In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988) (observing that "opinion work product is to be accorded great protection by the courts…the plain language of Fed.R.Civ.P. 26(b)(3) suggests especial protection for opinion work product"). The following documents most certainly qualify as opinion work product: Document 1 ("Remarks drafted by in-house counsel for the purpose of responding to pending litigation"); Document 9 ("Email from external counsel regarding response to pending litigation"); and Document 10 ("Email from external counsel containing discussion with external counsel regarding response to pending litigation"). These documents and others, which constitute the "mental impressions, conclusions, opinions, or legal theories of a party's attorney," are quintessential opinion work product and immune from discovery. Fed. R. Civ. P. 26(b)(3)(B); *see also Fed. Election Comm'n v. Christian Coalition*, 178 F.R.D. 61, 75 (E.D. Va. 1998) ("The Fourth Circuit prohibits absolutely the discovery of any opinion work product…").

Undeterred by his high burden to obtain work product, Lamb claims that he "has substantial need for this material to defend himself against pretextual claims that he was terminated for reasons unrelated to Title IX, and to demonstrate with tangible documents that he was not acting with reckless disregard for the truth or knowledge of falsity when he expressed his belief that he was terminated for reasons related to Title IX." (ECF No. 102 at 14.) However, these documents would not avail Lamb in making any such defense. One of the factors that courts consider in "determining the existence of substantial need" is the "importance of the materials to the party seeking them for case preparation." *E.I. Dupont de Nemours and Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 608–09 (E.D. Va. 2010). As explained above, these documents are irrelevant. Although Lamb apparently claims that he is entitled to receive them because there is some nexus between the requested documents, Title IX, and his firing, the Court has already rejected the idea that Lamb ever made actual, substantive complaints about Liberty's Title IX process in connection with Prevo's planned speech. Indeed, Lamb's only complaint was that the speech "was misleading and lacked 'empathy' and 'transparency;' he offered no basis to believe that the speech "discriminated on the basis of sex in violation of Title IX." (ECF No. 67 at 9-10.) Additionally, as explained in Liberty's motion to dismiss, Lamb has never identified any facts that might connect his communications regarding the draft speech and his firing. And, as explained above, many of these documents are highly-protected opinion work product. Even if Lamb could show substantial need (which he cannot), these documents would still be immune from disclosure. *See Fed. Election Comm'n*, 178 F.R.D. at 75. For this reason too, the Court should deny Lamb's motion.

## CONCLUSION

For the reasons above, Liberty respectfully requests that the Court deny Lamb's motion.

Dated:  August 2, 2022

        Respectfully submitted,

        LIBERTY UNIVERSITY, INC.
        BY COUNSEL:

        __/s/ Scott C. Oostdyk_____
        Scott C. Oostdyk (VSB No. 28512)
        Heidi E. Siegmund (VSB No. 89569)
        MCGUIREWOODS LLP
        Gateway Plaza
        800 East Canal Street
        Richmond, VA 23219
        (804) 775-1000
        (804) 775-1061 (facsimile)
        soostdyk@mcguirewoods.com
        hsiegmund@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of August, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send a true and correct copy to all counsel of record.

                                                                            /s/
                                       Heidi E. Siegmund (VSB No. 89569)
                                       MCGUIREWOODS LLP
                                       Gateway Plaza
                                       800 East Canal Street
                                       Richmond, VA 23219
                                       (804) 775-1000
                                       (804) 775-1061 (facsimile)
                                       hsiegmund@mcguirewoods.com