## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
## Lynchburg Division

| | |
|---|---|
| WALTER SCOTT LAMB, ) | |
| Plaintiff/Counterclaim Defendant, ) | Case No. 6:21-cv-00055 |
| v. ) | Hon. Norman K. Moon |
| ) | |
| LIBERTY UNIVERSITY, INC., ) | |
| a Virginia corporation, ) | |
| Defendant/Counterclaim Plaintiff. ) | |

### LAMB'S BRIEF IN SUPPORT OF HIS THIRD MOTION TO COMPEL AND OVERRULE OBJECTIONS

Comes now Walter Scott Lamb, by counsel, and pursuant to Federal Rule of Civil Procedure 37, files this brief in support of his motion to compel responses and overrule objections pertaining to Lamb's Requests for Production 27, 28, 30, and 32, (see Exhibit A); Interrogatories 24-25 (see Exhibit B); as well as materials withheld to date as attorney-client privileged materials, in support of which he states as follows.

### I.     Procedural Background

This discovery dispute arises from Liberty University, Inc.'s ("Liberty") counterclaim against Walter Scott Lamb, including Liberty's defamation claim and the various claims alleging mishandling of Liberty information, to include "text messages." ECF Doc. 10 at 21-23, 25-33.

Liberty's defamation claim asserts, inter alia, defamation by two factually false statements:

(1) "Here's the thing, even after I was fired, I had a Vice President call me up, 'What's your beef?' And I said, 'Well, that. The Title IX accusations, they have not been looked into.'"

(2) "The thing is, I've been discussing that [the "Title IX mishandling"] all spring. Like this 501(c)(3) dance is small potatoes…But the Title IX is where it all gets. . . ."

Liberty concludes in ECF Doc. 10, Counterclaim ¶ 54:

Liberty claims that the "Defamatory statements are objectively false." ECF Doc. 10, Counterclaim ¶ 57. This makes it a claim for defamation by a direct statement. Liberty requests an unspecified amount of damages "in excess of $75,000." ECF Doc. 10, Counterclaim ¶ 60. Lamb asked Liberty to identify verbatim all the so-called "Defamatory Statements." Liberty could only identify the two statements quoted in the complaint. See ECF Doc. 96-2, Inter. 7.

The record provides transcripts of the two quoted statements in their context. The "What's your beef" statement concerned sexual assault allegations allegedly communicated by third parties to Liberty through the so-called Baker-Tilly investigation, which allegations Lamb believes Liberty did not "look[] into." ECF Doc. 30-1 at 15:18-21, 16:8-14, 16:20-17:18, 18:16-19:11, 20:9-18, 20:21-21:8-9, 21:14-22:21.

As to the mishandling of Liberty data, including text messages, the record establishes that Mr. Lamb had only a personal cell phone to send or receive Liberty-related text messages, as Liberty "do[es] not buy cell phones" for its employees. Trans. of 12/16/21 at 88:9-10.

On or about May 2, 2022, Liberty responded to Lamb's first interrogatories and requests for production. ECF Docs. 96-1, 96-2. Liberty provided no responsive documents, and asserted attorney-client and work product privilege without providing a privilege log. In conjunction with an informal conference with the Court to resolve discovery disputes, Liberty stated it expected to produce documents on a rolling basis, completing its review by July 15, 2022, and it would produce the privilege log after completing its review. Exhibit 1. It further agreed to provide a partial privilege log, as to a certain class of documents (convocation speech materials) in advance to allow the disputes to be reviewed. (This privilege log was provided (ECF Doc. 102-1), and is the subject of the second motion to compel (ECF Doc. 101).)

Liberty did not complete its review of documents by July 15, 2022. In fact, Liberty provided no responsive documents until on or about August 25, 2022. It now acknowledges that was only a partial production. Liberty has not provided any further privilege log, and provides no deadline for the production of a privilege log. See Exhibit 2.

Meanwhile, Lamb served additional interrogatories and requests for production on Liberty, and Liberty served interrogatories on Lamb (Exhibit 3). Liberty provided its responses and objections on August 15, 2022, (see Exhibit 4 and 5), and Lamb provided its responses on or about August 19, 2022. Lamb attempted to resolve disputes about Liberty's discovery responses, and Liberty delayed and did not provide any material response, much less a productive response, until minutes before this motion was filed. Exhibit 2.

## II.     Law and Argument Concerning Scope of Discovery in Defamation Claims

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure 37 allows a party to move for a motion to compel discovery answers.

Federal Rule of Civil Procedure 26(b)(5)(A) requires a party that withhold information bays on privilege or trial-preparation materials by "expressly mak[ing] the claim" and by "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

3

### III.  Arguments and Authorities

#### 1.  Failure To Provide a Privilege Log, or to Produce Responsive Materials

Liberty had invoked attorney-client privilege and the work-product doctrine in response to Requests for Production 2, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 23, 24, 27, 29, 30, 31, 32, and 36. ECF Doc 96-1 and Exhibit 4. Yet, nearly two months after it was supposed to complete its review and produce a privileged log, it has only produced a privilege log as the to the convocation speech materials. ECF Doc. 102-1. And it offers no new deadline for the production of this privilege log. Exhibit 2.

This delay is prejudicial, as the materials requested are responsive to the defamation and other claims filed against Lamb by Liberty. For instance, Liberty has asserted that it will not produce materials related to the so-called Baker-Tilly investigation (ECF Doc. 96-1, RFP #24), even though Lamb's assertion that "The Title IX accusations, they have not been looked into" referred to the allegations reported to Baker-Tilly. Liberty is refusing to produce any correspondence or communications between Lamb and the office in charge of Title IX compliance (ECF Doc. 96-1, RFP #19), despite Liberty's claim that Lamb defamed Liberty by saying he has been discussing the Title IX mishandling all spring. The refusal to produce a privilege log is delaying resolution of disputes about the claim of privilege, it is delaying depositions, and it is delaying follow-up discovery.

Perhaps Liberty is dawdling in its production of these privilege log ***because Liberty's counsel waived any privilege it might claim*** by demanding Lamb to disclose the information in discovery in this case. For instance, it made the following demands:

> **Interrogatory No. 10:** Identify and describe **with particularity each and every** time **you communicated**, **either orally or in writing**, with **any current or former employee, agent, or representative of Liberty**, or any third party, about your concern or belief that you were terminated "in retaliation for [your]

4

opposition to the University's mishandling of Title IX sexual misconduct accusations," and in your answer state the name of any individual with whom you spoke **and what you contend was communicated or stated** by you and any other individual to whom you allegedly complained.

**Interrogatory No. 11:** Identify and describe **with particularity each and every time you communicated**, either orally or in writing, with any **current or former employee, agent, or representative of Liberty** about your concern or belief that Liberty was "mishandling" Title IX sexual misconduct allegations, and in your answer state the name of any individual with whom you spoke **and what you contend was communicated or stated** by you and any other individual to whom you allegedly complained.

**Interrogatory No. 12:** State **all facts** concerning your allegation, during an October 27, 2021 interview with WSET, that "[t]he Title IX accusations, they have not been looked into," including in your answer (1) each and every alleged Title IX accusation you were referring to; (2) the identity of the alleged complainant for each alleged Title IX accusation; (3) the specific Title IX allegations made by each complainant; (4) the manner in which you learned about each of the Title IX accusations; and (5) **all facts forming the basis for your belief that the alleged Title IX accusation had "not been looked into;"** and (6) who at Liberty you believe to have knowledge about each alleged Title IX allegation.

**Interrogatory No. 12:** State **all facts** concerning your allegation, during an October 29, 2021 podcast with Julie Roys, that "I've been discussing that [the Title IX mishandling] all spring," and in your answer **(1) identify with specificity each instance you allegedly discussed the "Title IX mishandling" in the spring of 2021**; (2) identify each and every person with whom you allegedly discussed the "Title IX mishandling;" (3) identify the date on which you had each discussion; (4) for each discussion, identify the method by which you had the discussion, whether in person, by telephone, via email or text message, or any other means; and (5) identify all witnesses present during each such discussion.

Exhibit 3. Liberty knew these requests would include disclosure of allegedly confidential communication, and pursuant to Liberty's demand, Lamb answered the questions to the best of his ability, providing the information Liberty requested to Lambs' legal counsel. Liberty irrevocably waived the privileges associated with the communications.

The Court must order Liberty to produce the responsive records, as it has failed to produce a privilege log, and it has waived its privileges.

5

2. **Request for Production 27 and 28 – Reputational Materials**

Liberty claims that Lamb has caused irreparable harm to Liberty's reputation. ECF Doc. 10, Counterclaim ¶¶ 57, 71, 89, 127-28. It must prove these reputational damages, and the causation of those damages, and Lamb may present and discover evidence that shows Liberty had no good reputation before, or that the reputational damages were caused by other factors.

Request for Production 27 (see Exhibit 4) seeks

> all communications (including but not limited to cease and desist letters, press statements, legal pleadings, or discovery responses) created since January 1, 2018, in which Liberty University, or someone acting on behalf of Liberty University, asserted that Liberty University or its then-current officers or employees had been slandered, defamed, or libeled, or had suffered reputational damages.

Liberty has offered to provide the complaint from a single lawsuit, from 2018, against the New York Times. It claims, "Liberty has not filed any other claims since July 1, 2018 in which it alleged slander, defamation, or libel." Exhibit 4.

This is inadequate. Lamb is entitled to more that just the complaint Liberty is willing to offer. He is entitled to **all** statements by Liberty, to include discovery responses, press releases, and the like, in which Liberty articulated the reputational damages it has suffered, or alleged that it suffered reputational damages. Liberty manifestly has blamed others for reputational damages. In a 2021 lawsuit against Jerry Falwell, Jr., Liberty asserted, "The several actions of Falwell Jr. in breach of his fiduciary duty have induced injury to Liberty's enrollment, impacted its donor base, disrupted its faculty, enabled the improper 2019 Employment Agreement, and damaged Liberty's reputation." Exhibit 6 at ¶ 136, see also ¶ 147. Lamb is entitled to see the damage Liberty attributes to its former President and others, because it mitigates the claim that Lamb damaged Liberty's reputation.

Similarly, in response to Request for Production 28 (see Exhibit 4), Liberty refuses to produce any "written or recorded statements or stories published by a third party to a public audience since January 1, 2018, mentioning Liberty University which Liberty University, Inc. or someone working on its behalf, has archived." These materials will evidence Liberty's reputation, and so are relevant and discoverable. Moreover, since they are limited to the ones "which Liberty University, Inc. or someone working on its behalf, has archived," Liberty has custody and control of the materials. Moreover, Liberty has injected press articles into this litigation by claiming that it will use "Cision, a media monitoring software, to assess the impact and advertising value of press stories generated as a result of Lamb's actions." ECF Doc 96-2 at 13. Showing the broader context of these "press stories generated as a result of Lamb's actions" would be necessary for the jury to properly assess the alleged reputational damages, and so the information is discoverable to rebut the intended calculation of the "advertising value of press stories generated as a result of Lamb's actions."

As such, the Court should mandate the production of these materials.

### 3. Request for Production 30 – FAQ Page Information

Lamb's alleged defamation concerned Baker-Tilly's failure to investigate allegations of Title IX violations. Liberty has signaled that it will claim the Baker-Tilly investigation

> had nothing to do with Title IX. Indeed, a Frequently Asked Questions document created as part of the Investigation explicitly states that the Investigation "is not to be used to report…(vii) Title IX concerns and violations."

ECF Doc. 100 at 6; ECF Doc. 100-3. But the FAQ page also claims that Baker-Tilly should receive "Any information that suggests that the University, or one or more current or former members of University Leadership, engaged in . . . ***any other activity that appears improper, unethical, or illegal***." ECF Doc. 100-3. In other words, rather than proving that Baker-Tilly

7

looked into any Title IX allegations it received, Liberty will claim that the Title IX allegations were not properly provided to Liberty. Lamb believes there are correspondence highlighting this apparent conflict to Liberty, and demonstrating that Liberty was open to the submission of Title IX materials to Baker-Tilly. And so Lamb has requested "all communications to or from employees of Liberty University concerning the text or content of the FAQ (frequently asked questions) page of https://lu.integrityline.org/." Despite injecting the FAQ page into the lawsuit, Liberty has refused to produce any records in response to this request.

Liberty should be required to produce these correspondences, as it has demonstrated an intent to rely on the ambiguous FAQ to bolster its claims.

**4. Request for Production 32 – Legal Holds**

Liberty claims that Lamb misappropriated Liberty text messages that were on his personal devise, yet it has failed to point to any policy that actually dictates whether or how Liberty employees are to handle, preserve, and archive Liberty text messages from their personal devises. In response to a request for "all communications or policies by or on behalf of Liberty University instructing Lamb how to preserve text messages sent or received through his personal cellular device," Liberty has stated, in part, "Lamb was subject to multiple legal holds, which required him to preserve text messages." Though Liberty has suggested it will produce some redacted version of these documents, it has not done so, and provides no timeline for doing so. These assertions, concerning the content of records, constitute both hearsay and/or a violation of the best-evidence rule. Liberty cannot be allowed hold Lamb to account for litigation holds that Liberty refuses to produce. Liberty should be required to produce these materials.

5. **Interrogatories 24-25**

Liberty refuses to provide answer to Interrogatories 24 and 25, arguing in a conclusory fashion that they are compound, and that Lamb has exceeded the number of allowable interrogatories. These are not compound. They are individual questions asking for a catalogue of records that Liberty possesses Lamb's personal Evernote account, information which is central to the claim of misappropriated informaiton. See Fed. R. Evid. 33 Notes of Advisory Committee for 1993 Amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). These requests are not "unduly burdensome," as they go to the center of the claim Liberty has against Lamb. As to Interrogatory 25, Liberty is refusing to identify even "by category" any documents that it assert was destroyed. The Court should compel answers.

IV. **Conclusion**

For these reasons, Lamb respectfully requests the Court to overrule these objections and require Liberty to produce the materials and answer requested, and all such further relief as may be appropriate, including attorney fees pursuant to Federal Rule of Civil Procedure 37.

The undersigned counsel certifies that counsel has attempted to confer to resolve this dispute without court action.

                Respectfully submitted,
                WALTER SCOTT LAMB

                THOMAS H. ROBERTS & ASSOCIATES, P.C.
                By: /s/ Andrew T. Bodoh, Esq.
                Thomas H. Roberts, Esq. (VSB 26014)
                tom.roberts@robertslaw.org
                Andrew T. Bodoh, Esq. (VSB 80143)
                andrew.bodoh@robertslaw.org
                105 South 1st Street

Richmond, Virginia 23219
Tel: 804-783-2000
Fax: 804-783-2105

Ian A. Northon, Esq.
*Admitted Only Pro Hac Vice*
Michigan—P65082
Pennsylvania—207733
Florida—101544
Northon Law, PLLC
4850 Tamiami Trail N, Ste 301
Naples, FL 34103
ian@northonlaw.com
service@northonlaw.com
(239) 784-7940

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2022, I presented the foregoing document(s) to the Clerk of the Court for filing and uploading to the CM/ECF system, which will provide electronic notice and copies of such filing(s) to counsel of record.

THOMAS H. ROBERTS & ASSOCIATES, P.C.
By: /s/ Andrew T. Bodoh, Esq.
Thomas H. Roberts, Esq. (VSB 26014)
tom.roberts@robertslaw.org
Andrew T. Bodoh, Esq. (VSB 80143)
andrew.bodoh@robertslaw.org
105 South 1st Street
Richmond, Virginia 23219
Tel: 804-783-2000 / Fax: 804-783-2105
ATTORNEYS FOR PLAINTIFF