CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/3/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| **WALTER SCOTT LAMB,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 6:21-cv-00055 |
| **LIBERTY UNIVERSITY, INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

Before me are three motions to compel filed by Plaintiff. Dkts. 95, 101, 112. Defendant asserts attorney-client privilege and the work product doctrine protection over the requested documents and further asserts that the discovery sought would be neither relevant nor proportional to the needs of the case. Dkts. 100, 107, 117. Plaintiff's motions to compel are **GRANTED IN PART** and **DENIED IN PART**.

Background

Defendant hired Plaintiff as Vice President of Special Literary Works and later promoted him to Senior Vice President of Communications and Public Engagement in April 2019. Dkt. 17 at 3. Jerry Falwell, Jr., served as President of Liberty University ("Liberty") from the time of Plaintiff's hiring until August 2020. Id. at 4. Following Mr. Falwell's resignation, Liberty's Board of Trustees engaged the law firm of Gentry Locke to investigate Defendant's "business operations, including without limitation financial and real estate related matters, during the tenure of Jerry L. Falwell, Jr. as President, and the legal implications arising from these matters." Dkt. 100, Exh. A., at 1. Gentry Locke hired Baker Tilly US, LLP, a forensic accounting firm, to

aid in the investigation. Dkt. 100, Exh. B. Plaintiff refers to this investigation as the "Baker Tilly investigation."

"Plaintiff's job responsibilities included serving as a spokesperson and media liaison for [Defendant]," which required "fielding many inquiries from members of the media concerning Title IX allegations" and lawsuits. Dkt. 17 at 4–6. Plaintiff served on Defendant's leadership team and helped with various additional projects, including reviewing President Jerry Prevo's remarks for an October 1, 2021 convocation to address sexual assault allegations (the "convocation speech").[1] Id. at 4, 7. Plaintiff told Prevo not to deliver the speech as written, but Prevo ultimately delivered a version of the speech that briefly addressed the issue of sexual assault. Id. Following the convocation speech, Plaintiff began to express concern about Liberty's direction. "Plaintiff repeatedly stated that he would not be silenced or participate in a cover up of activities within the University that Plaintiff believes contradicted the law, including the University's mishandling of many well-publicized reports of sexual assault, harassment, and discrimination on campus committed by current and former male students and staff against current and former female students and staff." Id. at 8–9. Defendant terminated Plaintiff's employment on October 6, 2021 which he contends was because of his "vocal opposition to the University's mishandling of sexual assault and harassment complaints in violation of Title IX and following his eight months of participation in the independent investigation into University practices." Id. at 8-9, 11.

---

[1] Defendant holds convocation twice a week and requires attendance for all on-campus students. See Convocation FAQ, LIBERTY UNIV., https://www.liberty.edu/osd/lu-stages/convocation/faq/ (last visited Oct. 13, 2022).

Plaintiff filed a Complaint alleging a retaliation claim under Title IX which the District Court dismissed. Dkt. 68. Defendant has asserted several counterclaims, including a claim for defamation[2] alleging that Plaintiff made two defamatory statements as follows:

1. In an interview with WSET on October 27, 2021, Lamb said, "Here's the thing, even after I was fired, I had the Vice President call me up, 'What's your beef?' And I said, 'Well, that. The Title IX accusations, they have not been looked into.'" Id. at 21–22.

2. On a podcast presented by Julie Roys on October 29, 2021, Roys, in discussing Lamb's October 4, 2021 meeting referenced in his Complaint, asked Lamb, "Did you discuss the Title IX mishandling as well? Tell me about that." In response, Lamb said, "The thing is, I've been discussing that all spring. Like this 501(c)(3) dance is small potatoes . . . But the Title IX is where it all gets . . . ." Id. at 22.

Dkt. 10 at 22. Defendant asserts that "[t]aken together, these statements by [Plaintiff] present a false factual narrative in which [Plaintiff] states to the media that he was fired by Liberty because he spoke up about Title IX allegations. These false statements will be referred to collectively as the 'Defamatory Statements.'" Id. Plaintiff interprets the counterclaim as asserting a defamation claim both by direct statement and by false implication. Dkt. 96 at 2.

## Law

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Bell Inc. v. GE Lighting, LLC, 6:14-cv-00012, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (Moon, J.) (citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003)). A party is entitled to information that is nonprivileged and relevant to a claim or defense in the matter at issue. Fed. R. Civ. P. 26(b)(1). Rule

---

[2] Defendant also alleges breach of contract, breach of fiduciary duty, conversion (or detinue in the alternative), Virginia statutory conspiracy, misappropriation of trade secrets, and violation of the Virginia Computer Crimes Act. Dkt. 10 at 21–33. Plaintiff has not raised any arguments related to these claims in his motions to compel.

26(b)(2)(C)(iii) requires the court to limit the frequency or extent of proposed discovery if it "is outside the scope permitted by Rule 26(b)(1)." A discovery request must be "proportional to the needs of the case," considering the importance of the issues, the amount in controversy, the parties' access to information and their resources, the importance of discovery, and whether the burden or expense of discovery outweighs any likely benefit. Fed. R. Civ. P. 26(b)(1).

Relevancy under Rule 26 "has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC, No. 1:06-cv-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (internal quotations omitted); Mainstreet Collection, Inc. v. Kirkland's, Inc., 270 F.R.D. 2382, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed to 'encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting Oppenheimer Fund., Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Proportionality, like relevance, is "accorded a broad and liberal construction." In re: Am. Med. Sys., Inc., MDL No. 2325, 2016 WL 307794, *4 (S.D.W. Va. May 31, 2016). But, "the court must limit the frequency or extent of discovery" if it determines the proposed request, even if relevant, is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C).

If a party fails to produce requested information, the requesting party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010). "Thus, once the moving party has made 'a prima facie showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1);

or (2) that the discovery sought 'is of such marginal relevance that the potential harm ... would outweigh the ordinary presumption of broad discovery.'" Berry v. Town of Front Royal, Virginia, No. 5:21-CV-00001, 2021 WL 4895204, at *2 (W.D. Va. Oct. 20, 2021) (Hoppe, J.) (internal citations omitted). Here, the District Court has dismissed Plaintiff's Complaint, Dkt. 68, but Defendant has asserted several counterclaims against Plaintiff, including defamation. Dkt. 10 at 21–23. Thus, issues of relevancy and proportionality are viewed through the pending claim of defamation as it relates to the two statements Liberty charges were defamatory.

To succeed on a claim of defamation by a direct statement, Defendant must prove "(1) publication of (2) an actionable statement with (3) the requisite intent." Choi v. Kyu Chul Lee, 312 F. App'x 551, 552 (4th Cir. 2009). To be actionable, a statement must be false and defamatory. Chapin v. Knight-Rider, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). "Therefore, truth is an absolute defense to defamation [by a direct statement] under Virginia law." Gilmore v. Jones, 339 F.R.D. 111, 121 (W.D. Va. 2021) (Hoppe, J.). Virginia also recognizes a claim for defamation by implication, see Pendleton v. Newsome, 772 S.E.2d 759 (2015), which requires that Liberty "make an especially rigorous showing where the expressed facts are literally true." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092–93 (4th Cir. 1993). "The defamatory implication must be present in the plain and natural meaning of the words used such that the words can be reasonably read to impart a false innuendo." Gilmore v. Jones, 370 F. Supp. 3d 630, 670 (W.D. Va. 2019) (Moon, J). Courts must consider statements as a whole when deciding if the statement is actionable. Gov't Micro Res., Inc. v. Jackson, 624 S.E.2d 63, 69 (Va. 2006).

The attorney-client privilege warrants special protection "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383,

389 (1981). The attorney-client privilege affords "all communications between attorney and client absolute and complete protection from disclosure." In re Allen, 106 F.3d 582, 600 (4th Cir. 1997). For the privilege to apply, an attorney-client relationship must exist, and the communication must be for the purpose of seeking legal advice. Adair v. EQT Prod. Co., 285 F.R.D. 376, 380 (W.D. Va. 2012) (citing Fisher v. United States, 425 U.S. 391, 403 (1976)).

A document is protected from discovery by the work-product doctrine if it was "prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992). Materials may be discoverable if a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendant, as the party opposing discovery, bears the burden of showing that information or material withheld from discovery is protected by the work–product doctrine. See Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998) (citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)); Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252, 254 (W.D. Va. 1999) (Sargent, J); Collins v. Mullins, 170 F.R.D. 132, 134 (W.D. Va. 1996) (Williams, J)..

### First Motion to Compel

Plaintiff's first motion to compel seeks documents sought in Request Nos. 6, 7, 10, 11, 14,[3] 19, and 24, and an answer to Interrogatory 18. Dkt. 95. Defendant broadly objected to these discovery requests on the grounds that they were irrelevant, overbroad, and/or protected by

---

[3] I address separately the attorney client privilege regarding Request No. 14 as raised in Plaintiff's Second Motion to Compel.

attorney-client privilege or the work product doctrine. Dkt. 100. Plaintiff's requests are as follows:

> Request No. 6: All documents, materials, and things, including electronically stored information, constituting, recording, or memorializing communications from January 1, 2020 to October 6, 2021, to or from Scott Lamb concerning Title IX compliance, Title IX violations, sexual acts, or sexual harassment by or of past or present Liberty University, Inc. employees, students, trustees, administrators, agents, faculty, volunteers, or staff, or allegations of the same.
>
> Request No. 7: All documents, materials, and things, including electronically stored information, relating to Liberty University, Inc.'s preparation, implementation, revision, amendment, alteration of Title IX policies and procedures, including but not limited to copies of the Title IX policies and procedures in effect between January 2018 and October 2021.
>
> Request No. 10: All documents, materials, and things, including electronically stored information, constituting or referencing correspondences between Scott Lamb and any other employee or agent of Liberty University Inc. between January 1, 2020, and the termination of Scott Lamb's employment with Liberty University, Inc., referencing Title IX.
>
> Request No. 11: All documents, materials, and things, including electronically stored information, constituting or referencing correspondences between Scott Lamb and any other employee or agent of Liberty University Inc. between January 1, 2020, and the termination of Scott Lamb's employment with Liberty University, Inc., that reference allegations of sexual misconduct or impropriety, to include without limitation sexual assault, sexual harassment, or sexual immorality, involving any past or present student, faculty, administrator, employee, agent, or trustee of Liberty University, Inc.
>
> Request No. 14: All documents, materials, and things, including electronically stored information, pertaining to the October 1, 2020 convocation speech of President Prevo, including all documents pertaining to any draft versions of a speech for the occasion that he elected not to give.
>
> Request No. 19: All documents, materials, and things, including electronically stored information, constituting, recording, or memorializing correspondences or communications between Scott Lamb and the office or employees in charge of Title IX compliance from January 1, 2020 to present.
>
> Request No. 24: All documents, materials, and things, including electronically stored information, concerning the Baker Tilly investigation including without limitation instructions, correspondences, notes, transcripts, recordings, draft documents, portal correspondences, or reports.

> Interrogatory 18: Identify all individuals responsible for receiving, investigating, and processing Title IX complaints for Liberty University, Inc. from January 1, 2020 to present, including providing their name, job title and a statement of their job responsibilities in relation to Title IX issues, a statement of whether they are still employed with Liberty University, Inc., their current (or last known) contact information, and the period of time in which they were responsible for receiving, investigating, and processing Title IX complaints.

Given the broad construction afforded to the rules of discovery, I find that Request Nos. 6, 10, 11, 14, and 19 are relevant and proportional. These requests seek information about Plaintiff's involvement with Title IX issues at Liberty. Dkt. 96-1 at 5–7, 10. Request No. 14 seeks information about materials relating to the convocation speech to be given by Prevo about pending Title IX-related litigation. Id. at 8. These requests could be used to prove substantial truth, which may completely bar Defendant's defamation by direct statement action. See Gilmore, 339 F.R.D. at 121. Additionally, the Court finds that Defendant has not met its burden to support the broad assertions of attorney-client privilege and the work product doctrine to the requested materials.

I find that Request No. 7 and Interrogatory 18 are not proportional to the needs of the case. Here, the burden on Defendant to produce the vast quantity of documents requested by Plaintiff outweighs any benefit that Plaintiff would receive. See Fed. R. Civ. P. 26(b)(1).

I find that Request No. 24 which seeks all materials related to the Baker Tilly investigation is not relevant to the case. Dkt. 96-1 at 12. The Frequently Asked Questions ("FAQ") page for the Baker Tilly investigation explicitly states that the investigation was "independent of Liberty University" and "is not a substitute for, or an alternative way, for students or employees to report complaints or allegations of misconduct . . . [of] Title IX concerns and violations." Dkt. 100-3 at 2. Because the investigation does not relate to Title IX, any materials related to the investigation are not relevant to the instant case.

Accordingly, I **GRANT** Plaintiff's first motion to compel regarding Requests Nos. 6, 10, 11, 14, and 19 and **DENY** the motion regarding Requests Nos. 7 and 24 and Interrogatory 18.

Second Motion to Compel

The Second Motion to Compel addresses Liberty's claims that the 17 documents withheld from production in response to Request No. 14 are protected under the attorney client privilege and/or the work product doctrine. The withheld documents are as follows:

LU000001: Convocation speech drafted by counsel.

LU000003: Edits by Plaintiff to the convocation speech.

LU000005: Memorandum to Prevo from Plaintiff regarding the convocation speech.

LU000013: Email from Plaintiff to various Liberty University employees, in-house counsel, and outside counsel regarding the convocation speech.

LU000015: Email from Jonathan Falwell[4] to Plaintiff in response to LU000013.

LU000017: Email from Plaintiff to various Liberty University employees, in-house counsel, and outside counsel regarding the convocation speech.

LU000020: Memorandum to Prevo from Plaintiff regarding the convocation speech.

LU000028: Email from Jonathan Falwell to Plaintiff in response to LU000017.

LU000031: Email from Candace McLaren, outside counsel, to Plaintiff, various Liberty University employees, in-house counsel, and other outside counsel discussing Plaintiff's edits to the convocation speech and outside counsel's role in litigation.

LU000034: Email from McLaren to Plaintiff, various Liberty University employees, in-house counsel, and other outside counsel acknowledging receipt of an email regarding the convocation speech.

LU000036: Email from Plaintiff to various Liberty University employees, in-house counsel, and outside counsel regarding the convocation speech.

---

[4] Jonathan Falwell is a campus pastor at Liberty University. See Jonathan Falwell Named New Campus Pastor at Liberty University, LIBERTY UNIV., https://www.liberty.edu/news/2021/04/08/jonathan-falwell-named-new-campus-pastor-at-liberty-university/ (Apr. 8, 2021).

LU000038: Email from Plaintiff to Ryan Helfenbein[5] regarding the convocation speech.

LU000040: Email from Plaintiff to Jonathan Falwell regarding the convocation speech.

LU000043: Email from Plaintiff to various Liberty University employees, in-house counsel, and outside counsel regarding the convocation speech.

LU000046: Memorandum to Prevo from Plaintiff regarding the convocation speech.

LU000054: Draft of the convocation speech by Plaintiff.

LU003744: Email from in-house counsel to Plaintiff, various Liberty University employees, and outside counsel regarding Plaintiff's edits to the convocation speech and strategy for litigation.

I have reviewed *in camera* the documents withheld from discovery. Judge Moon ruled broadly during a December 16, 2021 hearing that these documents were privileged, but he did not foreclose later re-evaluation of this privilege ruling. See Dkt. 52 at 160, ¶¶ 23–24 ("Well, I'll rule they are privileged at this point. I may have to change my mind later[.]"). Having reviewed the documents *in camera*, I find that the documents withheld from production by Defendant must be produced.

Here, Defendant argues that the relevant materials are protected by the attorney-client privilege and the work product doctrine. However, these privileges can be waived under the at-issue waiver doctrine.[6] Two standards govern the at-issue waiver doctrine – the Hearn standard and the Rhone standard. Under the Hearn standard, a court must evaluate three criteria to determine whether the at-issue waiver applies: "(1) assertion of the privilege was a result of

---

[5] According to the email, Helfenbein worked at the Freedom Center at Liberty University.
[6] "The doctrine applies equally to the attorney client privilege and the work product doctrine." Schaefer v. Fam. Med. Centers of S.C., LLC, No. 3:18-CV-02775-MBS, 2019 WL 2135675, at *6 (D.S.C. May 16, 2019). See also In re El-Atari, No. 09-14950-BFK, 2013 WL 593705, at *8 (Bankr. E.D. Va. Feb. 14, 2013); IntegraMed Am., Inc. v. Patton, 298 F.R.D. 326, 330 (D.S.C. 2014).

some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). Under the Rhone standard, the at-issue waiver applies "where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994). "The distinction between the two standards is whether relevance of privileged material alone is sufficient for waiver, or whether the asserting party must rely on the privileged material in asserting its position." In re Antitrust, No. 2:18-MD-2836, 2022 WL 4354620, at *5 (E.D. Va. Aug. 15, 2022) (emphasis removed). The Fourth Circuit has yet to adopt either test. See Elat v. Emandopngoubene, No. PWG-11-2931, 2013 WL 1146205, at *6 (D. Md. Mar. 18, 2013).[7] However, I find that Defendant has waived the attorney-client privilege and the work product doctrine under both the Hearn and the Rhone standards.[8]

Under the Hearn standard, Defendant filed its counterclaim for defamation related to Plaintiff's comments about Title IX and now Defendant asserts attorney-client privilege over drafts, edits, memoranda, and emails all relating to the convocation speech. The materials show that Prevo intended to address pending Title IX-related litigation through the convocation speech but eventually the focus of the speech changed. By asserting the defamation claim, Defendant

---

[7] In Shaheen v. Wellpoint Companies, Inc., the Fourth Circuit briefly explored the at-issue doctrine. 490 Fed. Appx. 552 (4th Circ. 2012). While the Fourth Circuit stated that the at-issue doctrine did not apply because Defendant's agents did not rely on advice of counsel in making the alleged defamatory statements, the Court cited to both Rhone and Hearn to support this proposition. Id. at 557. Although some courts have interpreted the Fourth's Circuit's Shaheen opinion to endorse the Rhone analysis over the Hearn analysis, see, e.g. In re Antitrust, 2022 WL 4354620, at *7; Elat, 2013 WL 1146205, at *6, Shaheen is an unpublished opinion that is explicitly "not binding precedent" in the Fourth Circuit. Shaheen, 490 Fed. Appx. at 552.
[8] Defendant also asserts that the work product doctrine prevents discovery of the relevant materials. However, the work product doctrine requires that the communications be made in anticipation of litigation.

made communications between its counsel and Plaintiff regarding Title IX relevant to the case – including the comments regarding the convocation speech. Those documents to Plaintiff's defense of substantial truth. Accordingly, I find that Defendant waived the attorney-client privilege and the work product doctrine as to the convocation speech materials under the Hearn standard.

Under the Rhone standard, Defendant must have relied on privileged communications in asserting its counterclaim. Defendant has done so here. Defendant repeatedly references attorney-client communications when discussing the defamatory statements allegedly made by Plaintiff. Regarding the statements made in an October 27, 2021 interview, Defendant states, "Lamb disgorged the privileged legal advice that he [had] acquired from both in-house [Liberty University counsel] and outside counsel regarding legal strategy on pending court cases." Dkt. 10 at 20. Defendant further states in reference to the same interview, "Lamb revealed confidential communications regarding the Liberty legal advice he learned about from outside counsel regarding Title IX actions." Id. Defendant then incorporated these statements into its defamation claim. Id. at 21 ("Liberty incorporates paragraphs 1 to 49 above as if stated within this section."). Defendant clearly relied on privileged communications to support its claim of defamation.[9] Accordingly, I find that Defendant has also waived the attorney-client privilege and the work product doctrine under the Rhone standard.

"It would be inequitable to permit the party to use the attorney-client privilege [or work product doctrine] as a sword by placing the advice of the attorney at issue while permitting the

---

[9] See First Am. Title Ins. Co. v. Bowles Rice, L.L.P., No. 1:16-CV-00219, 2017 WL 6329961, at *5 (N.D.W. Va. Oct. 23, 2017), objections overruled sub nom. First Am. Title Ins. Co. v. Bowles Rice, LLP, No. 1:16CV219, 2017 WL 6329953 (N.D.W. Va. Dec. 11, 2017) ("A close link between the attorney's advice and the reasonableness and good faith requirements, without [the plaintiff's] affirmative reliance on the privileged communications to support its claim is not sufficient to warrant waiver of the attorney-client privilege.").

same party to use the attorney-client relationship as a shield to prevent inquiry into the asserted claim or defense." Baltimore Scrap Corp. v. David J. Joseph Co., No. CIV. L-96-827, 1996 WL 720785, at *24 (D. Md. Nov. 20, 1996). Defendant tries to do just that by asserting attorney-client privilege and the work product doctrine over documents and communications specifically referenced in its counterclaim, which I will not allow. Accordingly, I **GRANT** Plaintiff's second motion to compel.

## Third Motion to Compel

Plaintiff filed the third motion to compel seeking responses to Requests for Production 27, 28, 30, and 32[10] and Interrogatories 24 and 25. Dkt 112. Defendant broadly objected to the requests for production on the grounds that they were irrelevant, overbroad, and/or protected by attorney-client privilege or the work product doctrine and objected to Interrogatories 24 and 25 on the grounds that they were compound and exceeded the number of interrogatories permitted under the federal rules. Dkt. 113-4 at 3–5; Dkt. 113-5 at 6. Defendant did not make any substantive objections to Interrogatories 24 and 25. Plaintiff's requests are as follows:

> Request No. 27: Produce copies of all communications (including but not limited to cease and desist letters, press statements, legal pleadings, or discovery responses) created since January 1, 2018, in which Liberty University, or someone acting on behalf of Liberty University, asserted that Liberty University or its then-current officers or employees had been slandered, defamed, or libeled, or had suffered reputational damages.

> Request No. 28: Produce copies of all written or recorded statements or stories published by a third party to a public audience since January 1, 2018, mentioning Liberty University which Liberty University, Inc. or someone working on its behalf, has archived.

> Request No. 30: Produce a copy of all communications to or from employees of Liberty University concerning the text or content of the FAQ (frequently asked questions) page of https://lu.integrityline.org/.

---

[10] Defendant indicated in its Response that Defendant has agreed to produce the documents requested in Request for Production 32. Dkt. 117 at 7–8. Because the Parties have reached an agreement, I will not rule on the motion to compel as it relates to Request for Production 32.

> Interrogatory 24: With respect to the materials Liberty University asserts to own which Lamb delivered to Liberty University, Inc. under the forensic protocols, identify each document or file by title or subject, date of creation, date of last modification, file type, file size in bytes or pages, whether Liberty University claims it is privileged and the nature of the privilege, whether Liberty University claims it is confidential and the reasons, and whether Liberty University had access to a copy of the file by other means between October 7, 2021 and the time Lamb provided the materials to Liberty University pursuant to the protocols.
>
> Interrogatory 25: Identify by category or by specific file any documents, materials, or things, including electronically stored information, that Liberty University, Inc. asserts that it owned and Lamb destroyed, excluding those documents, materials, or things that Liberty University currently has copies of or access to by other means.

I find that Request Nos. 27, 28, and 30 are not proportional to the needs of the case. Here, the burden on Defendant to produce the vast quantity of documents requested by Plaintiff, some of which are in the public domain, outweighs any benefit that Plaintiff would receive. See Fed. R. Civ. P. 26(b)(1). I find that these requests are unduly burdensome and not proportional to the needs of the case.

I also find that Plaintiff has not exceeded the allowed number of interrogatories. Rule 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Plaintiff served Defendant with 25 written interrogatories. "[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. 2005); see also CSX Transp., Inc. v. Peirce, No. 5:05-CV-202, 2012 WL 12892733, at *3 (N.D.W. Va. May 23, 2012) ("[W]hile it is clear there are subparts to the interrogatories . . . , these subparts are logically and factually subsumed within each of the interrogatories' primary inquiries. No subpart to any interrogatory has introduced a line of inquiry that is separate and distinct from the inquiry made by the main portion that precedes it, so it does

not have to be considered separate."). I find that each of Plaintiff's interrogatories is part of one line of inquiry. The interrogatories will be counted as numbered by Plaintiff.

Accordingly, I **GRANT** Plaintiff's third motion to compel as it relates to Interrogatories 24 and 25. I **DENY** Plaintiff's third motion to compel as it relates to Requests for Production 27, 28, and 30.

## Conclusion

Plaintiff's motions to compel (Dkts. 95, 101, 112) are **GRANTED IN PART** and **DENIED IN PART**. Defendant shall produce all documents and answer interrogatories as ordered within 14 days of the entry of this Order.

It is so **ORDERED**.

Entered: November 3, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge