IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| WALTER SCOTT LAMB, | ) |
|     Counterclaim Defendant, | ) |
| v. | )   Civil Action No. 6:21-cv-55 |
| LIBERTY UNIVERSITY, INC., | ) |
|     Counterclaim Plaintiff. | ) |

**LIBERTY UNIVERSITY, INC.'S FINAL STATUS REPORT REGARDING ITS GOOD FAITH EFFORT TO ASSESS POTENTIAL RESTORATION OR REPLACEMENT OF MATERIAL SPOLIATED BY WALTER SCOTT LAMB**

Liberty University, Inc. ("Liberty"), by counsel, and in accordance with the Court's Orders of August 25, 2022 (ECF No. 110) and February 6, 2023 (ECF No. 144), submits this third and final status report to aid this Court about potential restoration or replacement of the material spoliated in this case by Walter Scott Lamb ("Lamb").

**INTRODUCTION**

After an extensive evidentiary hearing in July 2022, in its Order of August 25, 2022, this Court concluded that Lamb "spoliated electronically stored information." (ECF No. 110 at 15.) To reach its decision, this Court correctly found that Lamb "knew he was acting outside the bounds of the law when he spoliated evidence, and that he did so with the purpose of depriving Liberty of the use of that evidence in this litigation." (*Id.* at 14.) The Court found it was "crystal-clear" that Lamb's actions demonstrated a "lack of good faith." (*Id.*) The Court determined that Lamb's overt actions obviated any need for Liberty to prove prejudice from the spoliation. (*Id.*) To determine whether Lamb's spoliation also warranted denial of leave for Lamb to file a second amended

1

complaint, as Liberty requested (ECF No. 84), this Court directed Liberty through discovery to determine whether the spoliated material "can be recovered or replaced." (ECF No. 110 at 15.) This Court authorized Liberty to petition for the reasonable fees and costs of this inquiry against the spoliator, Lamb. (*Id.* at 15.)

In its opening response to this Court's directive, Liberty filed a Status Report on October 24, 2022. (*See* ECF No. 129.) On December 9, 2022, Liberty filed a follow-up Status Report, detailing further progress. (*See* ECF No. 137.) In previous reports,[1] Liberty indicated it was still working on a handful of open issues. Specifically, in its December 9, 2022 report, Liberty announced it was awaiting a response from Apple, Inc. ("Apple") regarding a Liberty-issued subpoena, and that it was working through a cache of over 320 audio files contained on Mr. Lamb's Evernote storage area to determine if any constituted audio recordings of Lamb protesting Liberty's Title IX practices. These recordings could potentially replace material that originated on the destroyed cell phone Lamb frequently used as a recording device.

On February 6, 2023, this Court issued an Oral Order directing Liberty to "provide an update on its subpoena of Apple, Inc…." (ECF No. 144.) Liberty infers this Court is calling now for final input on this spoliation replacement issue. In this third report, Liberty will (1) briefly summarize its cumulative efforts to assess the restoration of the spoliated material; (2) close the loop on the status of its subpoena to Apple, and on the audio recording file review; and (3) ask this Court to grant Liberty's Motion for Sanctions and deny Lamb's Motion for Leave to File a Second Amended Complaint. Liberty asserts the material Lamb spoliated is neither recoverable nor replaceable, and that Lamb's twice-dismissed whistleblower suit is futile.

---

[1] In this its third submission, Liberty incorporates both its October 24, 2022 Status Report and the December 9, 2022 Status Report, by reference.

## SUMMARY OF LIBERTY'S RESTORATION EFFORTS

**I.      Lamb's Alteration of Cloud-Based Services and Destruction of Metadata**

At the December 2021 injunction hearing, this Court concluded from the evidence that Lamb had manipulated and destroyed data in his Evernote account in contravention of the Court's Order, and in breach of the parties' extensively-negotiated forensic protocol. (*See* ECF No. 110 at 9.) Liberty has previously reported that Lamb's improper alteration of Evernote data has resulted in a 2.61 gigabyte hole that arose "between the date in the Evernote system on April 14, 2022 (when the forensic collection was performed [by expert forensic consultant Vestigant]) and what was in Evernote on October 10, 2021 [when Evernote was in Lamb's custody]." (*Id.*) To assess the possibility of recovery or replacement of this significant tranche of missing Evernote data, Liberty did three things.

First, Liberty re-engaged Vestigant to determine if Vestigant could locate the spoliated data or provide a pathway toward restoration or recovery. Vestigant re-entered Lamb's Evernote account on September 14, 2022, confirming several things. Vestigant concluded that Lamb, with ample notice, had put back *none* of the data that he improperly removed from his Evernote. Vestigant confirmed it had no way to determine where Lamb had moved the missing Evernote data because Lamb had irreparably disrupted valuable metadata during his destructive prior forays into the database. (*Id.*) Often described as "data about data," metadata is tracking information, functioning akin to a library check-out card. With intact metadata, Liberty might have been able to understand the information Lamb had removed from his Evernote and determine if that data existed elsewhere, for possible replacement. Without metadata, Vestigant was flying blind.

Liberty points to one instance in which the metadata Lamb destroyed could have been highly useful. At the December 2021 injunction hearing, Lamb testified that he could not remember whether he had shared with the media copies of his October 1 memorandum contributing suggestions to a draft of a Dr. Prevo speech. (ECF No. 53 at 39:6-42:9.) Had Lamb not destroyed this Evernote metadata, Vestigant could potentially have verified if Lamb had withdrawn his October 1 memo from Evernote and the destination of those transmissions. Lamb made any such exercise impossible.

Second, Liberty followed up with Lamb to determine if cooperation between Liberty and Lamb could restore any of the missing Evernote data, along the lines of constructive suggestions. Vestigant had developed. (*See* ECF No. 129-1.) Liberty did several things to discharge this mission. It issued discovery requests to Lamb on September 27, 2022. (*See* ECF No. 137-1.) Among other things, Liberty demanded production by Lamb of the missing 2.61 gigabytes. In Lamb's responses on October 27, 2022, he failed to produce any of the missing Evernote data, stating "Lamb cannot located [sic] any responsive records in his possession, apart from those produce [sic] to Lamb by Liberty in discovery in this case." (*See* ECF No. 137-2.) Liberty followed up with Lamb's counsel, issuing a November 29, 2022 meet and confer letter. On December 5, 2022, Lamb's counsel responded that Lamb no longer has (or is unwilling to admit that he has) any of the vast amount of missing Evernote data. (*See* ECF No. 137-4.) Thus, working with Lamb, the most self-interested person in this case regarding the spoliation problem, proved a dead end for Liberty.

Third, Liberty doggedly explored third-party sources. On September 26, 2022, Liberty served a subpoena to Evernote, seeking to recover from Lamb's vendor the missing material in Lamb's Evernote. (*See* ECF No. 129-2.) In a response of October 24, 2022, Evernote confirmed

its inability to provide any of the missing data. (*See* ECF No. 137-7.) Lamb has done nothing further to work with his Evernote vendor on any other method of data restoration. Liberty concludes there can be no restoration of the Evernote data that Lamb spoliated, data that Liberty would need to defend against the putative whistleblower accusations advanced by Lamb.

## II.     Lamb's Destruction of His Physical Devices and Contents

The evidence at the July 2022 hearing proved Lamb used several physical devices to surreptitiously move around Evernote data—namely his son's old laptop, a thumb drive, and an external hard drive. Although obligated by the Protocol to surrender these devices, Lamb failed to produce them for inspection by Vestigant. Lamb also confirmed to Liberty that he no longer possessed any of the devices he used to make audio recordings of meetings and conversations while at Liberty, including his cell phone. Lamb consciously threw his thumb drive away. (ECF No. 127 at 180:17-25.)

Although it is clear Lamb inalterably spoliated his devices, Liberty nonetheless followed the same forensic path as it did with respect to Lamb's Evernote. On September 27, 2022, Liberty issued discovery requests to demand all devices or storage accounts that Lamb used to access his Evernote, download documents from Evernote, or create and store his claimed audio recordings. (ECF No. 137-1.) In response, Lamb produced no new devices. Liberty followed up. Lamb's counsel confirmed that Lamb was either no longer able or no longer willing to provide to Liberty and this Court any of the subject devices. (ECF No. 137-4.) Lamb has permanently deprived Liberty from the use of any such physical devices or their content in connection with this case.

## III.    Lamb's Destruction of his iPhone and Contents

Finally, it is undisputed that Lamb consistently used a personal iPhone for Liberty business. From this phone, Lamb sent text messages, accepted voicemails, and made work-related voice

recordings on the device. Despite the central importance of his phone to this case, at the July 2022 evidentiary hearing Lamb shockingly testified that though under court order he voluntarily turned his iPhone in to Verizon for a small rebate. (ECF No. 110 at 10-11).  Lamb determined from Verizon that the physical phone would be wiped and factory reset after he sold it to Verizon. (ECF No. 127 at 143:18-24.)  Therefore, as this Court recognized in its Order, Lamb's iPhone is gone from Lamb's control, along with its contents—including any material texts, voicemails, and recordings.

To exhaust the possibility of retrieval of such phone data, Liberty did three things. First, it issued a subpoena directly to Verizon on September 26, 2022. (*See* ECF No. 129-5.) In a response dated October 24, 2022, Verizon indicated that it would have retained the contents of any of Lamb's text messages for only 3-5 days post transmission, and that it does not maintain any voicemail messages at all. (*See* ECF No. 129-6.)  Thus, there is no possibility that Lamb's texts or voicemail can be reconstructed through Verizon's resources.

Second, Liberty petitioned Lamb directly, again, about his missing text messages and recordings. Lamb, as noted, conceded the unavailability of his material texts and any recordings that once were on his phone. (*See* ECF No. 137-2.)  Despite request, Lamb never identified to Liberty any particular text or recording that Lamb spoliated, for purposes of Liberty's search for its counterpart. (*Id.*)  Liberty has done its part.  In a February 6, 2023 order, Judge Ballou noted Liberty's representation that it "produced [to Lamb] all responsive text messages and audio records." (ECF No.143-4.) Judge Ballou also found "no evidence to the contrary that Liberty has produced all responsive text messages and audio recordings." (ECF No.143-4.)  Lamb concludes that he has no whistleblower content sourced from his cell phone.  Liberty concurs.  This ends the issue.

6

Third, Liberty listened to more than 320 voice recordings that Lamb had stored on Evernote, doing so on the off chance any of them pertained to the Title IX whistleblower issues Lamb asserts. If there were Title IX discussions in this content, the recordings might serve as a substitute for what Lamb recorded but destroyed from storage on his cell phone. Liberty started the exercise by reviewing Lamb's assertions to capture Lamb's focal allegations. In his original complaint (ECF No. 1), Lamb represented he protested Liberty's handling of Title IX matters to "many members of the Executive Leadership team, including, but not limited to, President Prevo, his predecessor Jerry Falwell, Jr., and General Counsel Corry." (ECF No. 1 at ¶ 39.) In his First Amended Complaint (ECF No. 17), Lamb repeated this same contention. (ECF No. 17 at ¶ 54.) In his proposed Second Amended Complaint (ECF No. 72-1), Lamb claimed he "advocated for these [Title IX] matters to be addressed swiftly, to bring the University into compliance with Title IX." (ECF No. 72-1 at ¶ 46.) Given this pleading, one would expect Title IX whistleblowing was a frequent conversation topic between Lamb and Liberty's leaders. Not so. Among these hundreds of recordings there were no conversations involving Title IX whistleblower pressure by Lamb against a Liberty official. None.

The closest thing to advocacy Lamb manifested in these 320 plus recordings was a fretful cell call Lamb placed to Falwell to warn the then-President that Lamb's son was recorded on camera in Washington, DC remarking about his conservative vote for in the national presidential election despite the "playboy" past of the candidate. Lamb believed the milquetoast sound bite was going to be "slammed" on John Oliver's weekly comedy program on HBO. Falwell brushed off the incident, to Lamb's audible relief.[2] This recorded call was telling because Lamb proved

---

[2] Liberty produced this Lamb audio recording back to Lamb in regular discovery, as part of its court-ordered discovery compliance. The audio recording at issue is identified as E0000125.mp3. If the Court has interest in the content, Liberty can make a copy specifically available.

he knew how to advocate to a Liberty President about a student's concern. It just so happened that the only time in over 320 recordings Lamb did so was to clear traffic for his own family member, and the issue at hand had nothing whatsoever to do with Title IX.

Fourth, to conclusively exhaust the possibility of retrieving any of Lamb's iPhone content from any available cloud or other backup source, Liberty issued a subpoena to Apple on September 26, 2022. (*See* ECF No. 129-7.) Apple initially responded that it is "unable to provide the contents of electronic communications…without subscriber consent." Accordingly, Liberty obtained a written consent from Lamb, which it provided to Apple on December 6, 2022. (*See* ECF No. 137-5; ECF No. 137-4.) On January 8, 2023, Apple demurred, advising Liberty (circularly) that any Apple data should be obtained from the account holder (*i.e.*, Lamb). (**Exhibit A**.) Given that Liberty had already fruitlessly pursued Lamb for his texts and recordings, and that Apple had not closed the access issue to Liberty's satisfaction, Liberty followed up. Liberty wrote Apple to confirm "that Apple will not be producing any of the [Lamb] documents or data requested[.]" (*Id.*) On January 10, 2023, Apple concurred. It stated that "the items requested in the subpoena are either not available from Apple, are already available from the account holder or contain contents of communication which federal law prevents Apple from providing." (*Id.*)

Liberty has run to ground the issue of Lamb's cell phone contents. There is no possibility that Lamb's texts, voicemail, or other phone data can be retrieved or reconstructed through Apple, and Lamb himself has admitted that he no longer has any such texts, voicemails, or data. Further Lamb has failed to identify any material texts or recordings he believes Liberty could locate and produce. In light of Verizon's similar inability to provide any such material, it is clear that Liberty cannot restore or replace any of the spoliated iPhone data.

## LIBERTY'S FUTILITY ARGUMENT

As explained more fully in Liberty's Opposition to Lamb's Motion for Leave to File a Second Amended Complaint (ECF No. 75), this Court should also deny Lamb leave to amend on futility grounds because Lamb's proposed Second Amended Complaint, like his first two complaints, fails to state a plausible Title IX retaliation claim. *See Booker v. City of Lynchburg*, 2021 WL 519905, at *1 (W.D. Va. Feb. 11, 2021) (Moon, S.J.) ("Amendment is futile when the proposed amended complaint fails to state a claim upon which relief can be granted.") (internal citations omitted). As a guideline, Virginia federal courts have frequently denied leave to amend where a plaintiff has already tried twice to plead his claim and failed. *See Allen v. FCA US LLC*, 2017 WL 1957068, at *4 (W.D. Va. May 10, 2017) (Moon, S.J.) (denying motion for leave to amend where the plaintiff "previously had two full opportunities" to plead her claim.) Not only has Lamb prevented proper adjudication of a whistleblower claim by mutilating or destroying the factual record, but he has also worn his legal welcome by failing to state a cognizable claim twice previously.

## CONCLUSION

In sum, Liberty has proved that Lamb's third effort to plead a whistleblower case would be futile and unfair because Lamb's bad faith destruction of evidence has materially compromised and obstructed Liberty's putative defense, and thus the orderly operation of litigation. Through its extensive reconstruction efforts, Liberty has conclusively shown the large-scale spoliation by Lamb "cannot be restored or replaced through additional discovery." *See* Fed. R. Civ. P. 37(e). Accordingly, based on the evidence presented at the July 2022 evidentiary hearing, and the efforts outlined in all three of Liberty's status reports, Liberty respectfully requests that this Court grant Liberty's Motion for Sanctions, deny Lamb's Motion for Leave to File a Second Amended

Complaint, and award Liberty all other relief this Court deems just and proper including fees and costs. Alternatively, if this Court requires any further information to rule on Liberty's Motion for Sanctions, then Liberty requests that the Court issue a schedule for supplemental briefing or schedule a supplemental evidentiary hearing to further resolve the facts presented in this report.

Dated:  February 21, 2023

Respectfully submitted,

LIBERTY UNIVERSITY, INC.
BY COUNSEL:

  /s/ Scott C. Oostdyk
Scott C. Oostdyk (VSB No. 28512)
Heidi E. Siegmund (VSB No. 89569)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000
(804) 775-1061 (facsimile)
soostdyk@mcguirewoods.com
hsiegmund@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of February, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send a true and correct copy to all counsel of record.

_____/s/_____
Heidi E. Siegmund (VSB No. 89569)
MCGUIREWOODS LLP

Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000
(804) 775-1061 (facsimile)
hsiegmund@mcguirewoods.com

11