IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **WALTER SCOTT LAMB,** | ) |
| Counterclaim Defendant, | ) |
| v. | ) Civil Action No. 6:21-cv-55 |
| **LIBERTY UNIVERSITY, INC.,** | ) |
| Counterclaim Plaintiff. | ) |

**LIBERTY UNIVERSITY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO LAMB'S MOTION FOR LEAVE TO FILE CERTAIN EXHIBITS UNDER SEAL**

Counterclaim Plaintiff Liberty University, Inc. ("Liberty"), by counsel and pursuant to this Court's Order of May 15, 2023 (ECF No. 162), submits this memorandum in opposition to Lamb's motion to unseal certain specified and confidential Liberty documents ("Liberty Documents").

**INTRODUCTION**

After extensive briefing by both parties, on February 22, 2023, Judge Moon granted Liberty's motion for sanctions and denied Lamb's motion to file a Second Amended Complaint because of Lamb's intentional spoliation of evidence. Judge Moon determined that Lamb's deliberate abuse of Liberty's documents under Lamb's wrongful control had siphoned from Liberty the ability to fairly and fully defend any legal action Lamb might resume, and that Lamb's ability to fairly prosecute his case would be impermissibly tainted. Judge Moon's spoliation ruling prompted Liberty to evaluate the remnant Counterclaim that it had filed to rebut Lamb's litigiousness. Liberty opted to file a Rule 41 motion for voluntary dismissal, to save both parties the expense of continued litigation. Because of Liberty's withdrawal of its Counterclaim, the only remaining issues pending in this action are (1) Liberty's pending motion for legal fees for Lamb's

1

spoliation, (2) Lamb's attempt to seek his fees as a "condition" of the dismissal of Liberty's Counterclaim, and (3) Lamb's attempt to dump a series of confidential and sensitive Liberty-owned Liberty Documents into the public record, for Lamb's future use of now-exposed material that he could not win the right through litigation in this Court to legally control.

On May 15, 2023, Judge Hoppe issued an Order sealing the Liberty Documents for 28 days and directing Liberty to file a response within 14 days regarding why the Liberty Documents should remain permanently under seal. (ECF No. 162.)  Liberty thanks the Court for the chance to defend the Liberty Documents.

There are three reasons it is imperative this sensitive Liberty information should remain under seal.  *First*, Lamb has manufactured a "conditions" motion he claims to be his pathway to attorneys' fees in connection with Liberty's Rule 41 dismissal.  Lamb faces an insurmountable hill in proving Liberty's bad faith in asserting its defamation counterclaim.  Lamb's election to use an absurdly-over-reaching volume of more than 285 Liberty Documents to try to do so is merely a thinly-veiled attempt to create in this Court a library of Liberty documents for his future use in social media or in pursuing further his private vendetta against Liberty. The law should afford Lamb no such license in the form of liberalized access to the Liberty Documents from federal court files after his abuse of the judicial process that culminated in Judge Moon's sweeping sanctions. Lamb should be forced to prove the relevance of the more than 285 documents and have them entered into evidence before he should have even an argument to access the Liberty Documents post-litigation.  It is well-settled that courts may decline to unseal documents when the movant's request is premised upon bad faith.  Liberty asks this Court to make Lamb prove the bona fides of his arsenal of Liberty Documents prior to permitting their release to the public.

*Second*, the Liberty Documents are Liberty's private communications, materials, and data—they do not qualify as "judicial records" in any manner. They are not relevant or useful in the judicial adjudication of any pending claim or substantive rights. Thus, the common law right of access does not apply to the Liberty Documents. The Court can dispose of Lamb's request to unseal on this threshold and basic basis alone.

*Third,* the Liberty Documents were marked "Confidential" by Liberty pursuant to the parties' Protective Order, a designation Lamb never challenged until Lamb lost the sanctions motion and Liberty lodged its Rule 41 motion. When Lamb realized he was heading out of court without access to this passel of sensitive Liberty Documents, he only then reacted with this effort to unseal them though Confidential. The Liberty Documents contain and concern internal Liberty communications on a variety of sensitive topics, including protected FERPA compliance, sensitive internal investigations, privileged litigation strategy, private communications with Liberty students, and internal Liberty's business processes and procedures, among others discussed below. Lamb tortures logic and the law by arguing that because he has filed a thin and likely-unwinnable conditions motion, he has created thereby a public interest in and right to access these confidential documents that largely have *zero bearing on any claim* in this action.

For all of these reasons, this Court should deny Lamb's request and leave Lamb's harvested portion of the Liberty Documents permanently under seal.

## LEGAL STANDARD

For a right of access to exist to documents filed in public courts, first and foremost, "the document must be a "judicial record." *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). Once a document is regarded as a judicial record, district courts "have discretion to deny access to documents to prevent their use for an

improper purpose or to protect a litigant's competitive standing." *RLI Ins. Co. v. Nexus Servs., Inc.*, 2020 WL 2616516, at *2-3 (W.D. Va. May 22, 2020). In undertaking such an analysis in the context of a motion to unseal,[1] courts can consider various factors, including: "(1) whether the subject matter is traditionally considered private; (2) the injury the resisting party would suffer if the privacy interest were not protected; (3) whether the person seeking the unsealing has an improper purpose; (4) whether the public already has access to the information in the sealed documents; and (5) whether release would enhance the public's understanding of an important event." *Id.* When it is clear that these interests and factors outweigh the common law right of access, a court should refuse to unseal confidential documents. *See, e.g.*, *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir.2004) (holding it was not an abuse of discretion to refuse to unseal documents containing confidential and proprietary business information).

## **ARGUMENT**

Guided by these well-established principles and the particular circumstances of this case, this Court should keep the Liberty Documents permanently under seal for three reasons:[2] (1) Lamb's motive in seeking the unsealing of these Liberty Documents is wholly improper; (2) the Liberty Documents are not "judicial records," and therefore the common law presumptive right of

---

[1] Although facially labeled a "Motion to Seal," Lamb's motion is effectively one to unseal Liberty's private documents, as Lamb himself admits. *See* (ECF No. 160 at 4) ("Lamb does not support leaving these records permanently under seal.") Lamb's Motion proposes the documents remain under seal for a mere 28 days at most.

[2] If this Court finds that the Liberty Documents at issue are in fact "judicial records," then Liberty does not, upon further review, oppose the unsealing of the following documents: LU5880-5889, LU6055-6060, LU6087-6090 (contained in Lamb's Exhibit 11); LU6153-6165 (contained in Lamb's Exhibit 16); LU6005-6033 (contained in Lamb's Exhibit 21); and LU5824 (contained in Lamb's Exhibit 44). Liberty believes the redactions in these documents sufficiently protect Liberty's privacy and confidentiality interests, and therefore, sealing is not necessary. However, Liberty forcefully rejects any inferences raised by Lamb that the redactions contained in these documents (or any others) are unnecessary to protect Liberty's privacy interests, and/or attorney-client privileged and work product protected information.

access does not apply; 3) the Liberty Documents concern subject matter that is traditionally private, in which the public has no interest, and Liberty would be prejudiced by the unsealing of these private internal documents.

**I.    This Court Should Refuse to Unseal the Liberty Documents Because Lamb has Established no Proper Purpose in Trying to Make Them Public.**

When faced with a motion to unseal judicial records, courts should consider "whether the person seeking the unsealing has an improper purpose." *RLI Ins. Co.*, 2020 WL 2616516, at *2; *see also Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."); *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 729 (M.D.N.C. 2013) (observing that public right of access "has been denied where court files might have become a vehicle for improper purposes," such as using court records to gratify private spite, to promote public scandal, or as "sources of business information that might harm a litigant's competitive standing") (internal quotations and citations omitted).

In this case, it is clear that Lamb has acted improperly in asserting a claim of bad faith against Liberty to seek an award of attorneys' fees as a condition on Liberty's voluntary dismissal, given that he filed approximately 285 documents in "support" of that request. As Liberty explained fully in its reply brief (ECF No. 165), Lamb is an adjudicated spoliator of evidence and has demonstrated bad faith already in the conduct of this case. As Liberty contends, this malfeasance should bar any practical right that Lamb might have had to procced with a request for fees and a related motion to unseal. (*See* ECF No. 165 at 18-23.) An adjudged spoliator, Lamb only came by the Liberty Documents he wants to unseal through discovery of Liberty's Counterclaim against him, which Liberty has now voluntarily elected to curtail in an effort to save all parties from the time and expense of additional litigation. This Court dismissed Lamb's own case with prejudice

5

in February as a sanction for his spoliation. Therefore, the Liberty Documents are not relevant to any pending affirmative claim, and, thus, there is no justification to unseal and publicly reveal them. For the reasons Liberty has already presented to this Court, Lamb cannot prove the Liberty Documents support the derivative and ill-founded claim of bad faith that Lamb levies against Liberty as the basis for his fee petition. *See* ECF No. 165 at 10-11.[3]

Ultimately, Lamb's claim of bad faith by Liberty and accompanying motion to unseal is simply another attempt by Lamb to create a vehicle through which to deposit in the public record documents that he might later use in social media, advocacy communications, or other mediums to advance his tired and *twice* defeated narrative about Title IX. Fundamentally, Lamb's actions are little more than harassment directed at Liberty—another stab at furthering his personal vendetta against Liberty due to his disaffection from his unredressed termination. This is not an appropriate use of the judicial system. *See Mirlis v. Greer*, 952 F.3d 51, 64–67 (2d Cir. 2020) (finding the "presumptive right of access" to documents was "erode[d]" by the motivations of the party seeking unsealing, "including those suggesting a probability that he was pursuing not the public interest, but personal vendettas"). Lamb squandered his Title IX claims by failed pleadings and reprehensible spoliation; he deserves no judicial aid in further attempt to make a public record related to his now-failed claims.

---

[3] Compounding the impropriety of Lamb's request for unsealing is the fact that, in several places, Lamb has filed multiple copies of the same documents. *See*, *e.g.*, Exhibit 11 (LU6042; 6044-6050; Exhibit 19 (LU4194-4196; 4297-4310); Exhibit 21 (6005-6033); Exhibit 32 (LU6426-6427; 6508; 6576-6582); Exhibit 36 (LU6590-6591); Exhibit 42 (LU6590-6591). Lamb's profligate filings serve no purpose than to waste the time and resources of the parties and the Court.

**II.  This Court Should Accord No Right of Public Access to the Liberty Documents Because They Are Not "Judicial Records."**

This Court should find that no presumptive right of public access applies to the Liberty Documents because they are not "judicial records." "The mere filing of a document with a court does not render the document judicial." *Spear v. Ernst & Young (In re Policy Mgmt. Sys. Corp.)*, 1995 U.S. App. LEXIS 25900, at *13 (4th Cir. Sept. 13, 1995). A document becomes a judicial document when a court uses it in determining litigants' substantive rights. *Id.* A "document must play a relevant and useful role in the adjudication process in order for the common law right of public access to attach." *Id.* The quintessential example of judicial records are documents "filed in connection with a dispositive motion, such as a motion for summary judgment," where a court actually relies upon the documents in reaching its ruling. *In re United States*, 707 F.3d at 290.

In his motion, Lamb makes the conclusory assertion that the Liberty Documents are "judicial records" merely because Lamb self-servingly filed them in connection with his effort to establish a "conditions" claim in response to Liberty's Rule 41 Motion for Voluntary Dismissal. (Lamb's Motion to Seal, "Motion," ECF No. 160 at 4.) Lamb's argument is incorrect, and specious. As Liberty already laid out, the Liberty Documents that Lamb amassed to attach to his "conditions" motion do not support Lamb's ill-conceived assertion of bad faith he advanced in support of his request for attorneys' fees. *See* (ECF No. 165 at 10-11.) As they are not relevant or useful in the judicial adjudication of substantive rights (as opposed to an eleventh-hour quest for fees and an attempt to pad a public record for later purposes), the Liberty Documents do not qualify as "judicial records." They are simply "raw fruits of discovery" that Lamb obtained solely by virtue of discovery on Liberty's Counterclaim, which now has ended. *Va. Dep't of State Police*, 386 F.3d at 576; *see also United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 139 (2d Cir. 2017)

(recognizing "that documents passed between the parties in discovery lie entirely beyond the reach of the presumption of public access") (internal quotations and citation omitted).

These Liberty Documents serve no role in the adjudication of any substantive rights in this case. They are not, for example, documents filed in connection with a carefully-crafted motion for summary judgment. Instead, Lamb seeks to unseal part of a larger set of more than 285 documents that Lamb has filed in connection with his request for attorneys' fees as a condition on the voluntary dismissal of Liberty's Counterclaim. Crucially, as Liberty explained in its reply brief (ECF No 165), this Court need not even rely upon (or even consider) the Liberty Documents to deny Lamb's request for fees, much less grant Liberty's motion for voluntary dismissal. (ECF No. 165 at 10-11.) *See In re Policy*, 1995 U.S. App. LEXIS 25900, at *13 (holding documents "did not achieve the status of judicial documents" where the "documents in this case did not play any role in the district court's adjudication of the motion to dismiss"); *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 294 (W.D.N.C. 2019) (denying motion unseal confidential, internal documents where the court did "not rely on these documents in assessing and granting [the defendant's] Motion for Summary Judgment" and thus "keeping them under seal [did] not infringe upon the public's interest in assessing the basis of the court's decision in this matter").

Lamb's filing the Liberty Documents with this Court does not magically transform them into judicial records. *See Doe v. Syracuse Univ.*, 457 F. Supp. 3d 178, 204 (N.D.N.Y. Apr. 30, 2020) ("Not all papers filed with the court qualify [as judicial records]; in order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process"). Affording the public "[u]nlimited access to every item turned up in the course of litigation would be unthinkable." *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.

1995). This rationale is particularly apt here where Lamb has simply filed the Liberty Documents simply because he wants Liberty's private communications thrust into the public sphere.

Even setting aside the impropriety of Lamb's request to unseal, the Liberty Documents are not relevant or useful to the adjudication of any claim pending before this Court. With this Court's dismissal of Lamb's case as a sanction for his spoliation of evidence and Liberty's voluntary dismissal of its Counterclaim, there are no remaining issues that implicate substantive rights to which the Liberty Documents would be relevant, much less useful. For these reasons, the Liberty Documents are not judicial records, no public right of access applies, and this Court should keep the Liberty Documents permanently under seal. *See United States ex rel. Thomas v. Duke Univ.*, 2018 WL 4211375, at *4 (M.D.N.C. Sept. 4, 2018) (concluding documents that were "not proffered towards substantive issues in the case" and that the "Court did not rely" upon were "not judicial records and the public [did] not have a right to access them").

Finally, even if this Court finds that the Liberty Documents are judicial records, only the common law right of access would apply, as Lamb himself concedes. *See* (Motion at 4.) This undisputed point is significant "because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment," and can be overcome by competing interests. *Va. Dep't of State Police*, 386 F.3d at 575. This is precisely the case here, as Liberty's interests in its own private, internal documents outweighs what is zero public interest in the Liberty Documents.

### III. The Liberty Documents Should Remain Sealed Because They Concern Subject Matter That Is Traditionally Private, in Which the Public Has No Interest, And Liberty Would Therefore be Prejudiced by Their Unsealing.

In his motion, Lamb boldly asserts that "Liberty has little or no legitimate interest in preserving the confidentiality of these" Liberty Documents, and that the "public has an interest in

accessing these" Liberty Documents. (Motion at 4-5.) Lamb is wrong on both accounts. If this Court does not find the Liberty Documents are judicial records (which it should), then it must find that Liberty's interests outweigh the weaker common law right of access Lamb seeks. The subject matter of the internal Liberty Documents is traditionally private and the public has no interest in the Liberty Documents which are not relevant to the adjudication of any claim, and Liberty would be prejudiced by the unsealing of them.

When considering whether to unseal documents, courts should consider a variety of factors, including whether the subject matter of the documents is "traditionally considered private," whether the public has an interest in the documents, and whether "the injury" or prejudice the "resisting party would suffer if the privacy interest were not protected." *RLI Ins. Co.*, 2020 WL 2616516, at *2-3. Here, for the following reasons, all factors weigh in favor of keeping the Liberty Documents permanently under seal.

### a. The Liberty Documents are confidential internal documents, covering subject matter that is traditionally private, and in which the public has no interest.

Even a cursory review of the Liberty Documents reveals the indisputable conclusion that these Liberty Documents are private, internal materials, in which Liberty (and not the public) has a significant privacy interest. Given Lamb's decision to file more than 285 documents with his opposition to Liberty's Rule 41 motion, there are a wide variety of document types and subjects among the Liberty Documents at issue. All of the Liberty Documents, however, are "traditionally private," and many of the Liberty Documents implicate more than one type of privacy interest, as indicated by the categories below:

A first category of documents Lamb seeks to unseal involves internal communications between Liberty employees (including members of Liberty's highest levels of leadership and/or Liberty's counsel) covering a wide variety of sensitive topics. For instance, internal

10

communications regarding Liberty's obligations to comply with the Family Educational Rights and Privacy Act ("FERPA"). *See* Exhibit 11 (LU6039-6040; 6042; 6044-6050; 6478-6480; 6483-6487).[4] Another topic includes communications that touch on the scope of the internal investigation that Liberty retained law firm Gentry Locke to conduct, with the aid of forensic accounting firm Baker Tilly. *See* Exhibit 7 (LU6820-6822); Exhibit 9 (LU7207); Exhibit 11 (LU6148-6149). Notably, in an Order of November 3, 2022, Judge Ballou expressly ruled that "any materials related to the investigation are not relevant to the instant case." (ECF No. 133 at 8.)

Similarly, some communications involve discussions of Liberty's litigation strategies as to separate and completely unrelated litigation. *See* Exhibit 19 (LU4194-4196; 4297-4310; 4911-4912; 4953; 5966-6004); Exhibit 31 (LU4372; 6169-6172; 6275-6280); Exhibit 32 (LU3744-3747); Exhibit 39 (LU31-33; 3726); Exhibit 40 (LU34-35). The law is well-settled that documents bearing on litigation strategies implicate the privacy interests of the producing party and should remain under seal. *See Synthes Spine Co., L.P. v. Walden*, 2007 WL 9807519, at *1–2 (E.D. Pa. Jan. 18, 2007) (ordering documents that could reveal "litigation strategies" to remain under seal); *Omax Corp. v. Flow Intern. Corp.*, 2007 WL 4108604, at *2 (W.D. Wash. Nov. 13, 2007) (sealing documents that were of no "interest to the public" because they "reflect[ed] litigation strategy having little to do with the nature, scope, and validity of the underlying patents" that were the focus of the case).

Additionally, numerous communications involve internal strategy discussions and deliberations among Liberty employees regarding possible responses to media inquiries and

---

[4] All exhibit numbers refer to the Exhibits filed by Lamb in connection with his response to Liberty's Rule 41 motion.

coverage. *See* Exhibit 11 (LU6051-6054; 6073-6074; 6103-6106; 6148-6149; 6474-6476); Exhibit 19 (LU5966-6004); Exhibit 23 (LU4188; 4500-4501; 6512); Exhibit 31 (LU4374-4375; 4377-4379; 4412); Exhibit 34 (LU4568-4572); Exhibit 36 (LU4900). Another set of sensitive communications include those communications between Liberty employees and Liberty students, both current and former. *See* Exhibit 23 (LU4500-4501); Exhibit 36 (LU3750-3755; 6590-6591; 4521-4522; 4605-4606). In addition to Liberty's clear privacy interests in these internal communications, the students involved in these communications have their own privacy interests, which also weigh against the common law right of access. Although Liberty has redacted the names of the students, it is possible to infer the identity of some of these individuals from the context of the communications. For public protection, these documents should remain sealed.

A second category of documents includes or concerns draft documents, including responses to media inquiries, statements about pending litigation, and publications, that were circulated for internal comment and review. *See* Exhibit 11 (LU6142-6143; 6507-6511); Exhibit 31 (LU6275-6280); Exhibit 32 (LU3744-3747; 5768; 6426-6427; 6568; 6576-6582); Exhibit 34 (LU4568-4572); Exhibit 36 (LU4521-4522; 4570; 4608-4614; 6590-6591); Exhibit 39 (LU13-14; 17-27; 31-33; 3726); Exhibit 42 (LU4617). Draft documents and related communications involving parties "workshopping" such drafts solely implicate Liberty's own privacy interests; the public has no interest or right of access to such documents. *See In re Zantac (Ranitidine) Prods. Liability Litig.*, 2022 WL 17480932, at *2 (S.D. Fla. Dec. 6, 2022) (finding producing party's interest in sealing a cover email regarding "how to edit [a] draft study" "outweigh[ed] the public's interest in access"). Although Judge Ballou found waiver of Liberty's claims to privilege and work product protection as to a narrow subset of documents related to the October 1, 2021 convocation speech (e.g., LU13; 17; 20; 31) this ruling did not affect the Liberty Documents' status

as confidential internal documents. (ECF No. 133 at 9-13.) Judge Ballou simply ordered Liberty to produce such documents in discovery; he did not permit the documents to be publicly disclosed.

A third category of Liberty Documents is comprised of communications related to Liberty's internal business processes, procedures, and operations, including the reviews performed by its Strategic Analysis Team. *See* Exhibit 27 (LU328; 330; 542; 864-865; 867-868; 957; 6781-6785); Exhibit 31 (LU4377-4379); Exhibit 34 (LU4568-4572); Exhibit 36 (LU4523-4526; 4897-4899); Exhibit 45 (LU7283-7284). Courts routinely seal documents containing information about a party's internal business processes and procedures. *See*, *e.g.*, *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 570–71 (E.D. Va. 2021) (granting motion to seal document that contained confidential information outlining the proponent's internal processes and "procedures"); *Danville Grp. v. Carmax Bus. Servs. LLC*, 2021 WL 6332787, at *1 (E.D. Va. Sept. 28, 2021) (granting motion to seal documents that "contain[ed] confidential and sensitive information relating to the Parties' business practices"); *Trustees of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*, 2021 WL 8895279, at *3 (E.D. Va. Sept. 29, 2021) (granting motion to seal where documents contained "highly confidential, nonpublic information regarding [proponent's] business, processes, and products" because those "interests outweigh[ed] the public's right to access").

A fourth category of documents also includes private text messages exchanged between two members of Liberty's leadership, neither of whom is Lamb. *See* Exhibit 27 (LU6781-6785). Finally, the Liberty Documents also include a surreptitious audio recording of a conversation Lamb had with acting Liberty President Dr. Jerry Prevo, recorded without Dr. Prevo's knowledge. *See* Exhibit 26 (LU7036). As with the Liberty Documents detailed above, it defies logic for Lamb to suggest that the public has any interest in the private texts or illicit audio recordings of Liberty

13

employees, particularly when the texts and recordings have no relevance whatsoever to any pending claim.

At bottom, all of the Liberty Documents that are the subject of this motion concern, in one form or another, sensitive internal Liberty information. The majority of the information and communications in these Liberty Documents are not available to the public or to anyone beyond a small group of Liberty attorneys and employees. *See Flexible Benefits Council v. Feltman*, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008) (granting motion to seal documents containing "confidential" information that was "normally unavailable to the public" because the "public's interest in access is outweighed here by the Plaintiff's interest in preserving confidentiality"). Liberty has taken measures to preserve its privacy interests in these Liberty Documents by marking them "Confidential" pursuant to the parties' Protective Order. (ECF No. 94.)

Lamb seeks to circumvent Liberty's interests and file these Liberty Documents unsealed simply because he wants to harass Liberty by airing its sensitive internal communications publicly. The public, however, has no interest in any of the Liberty Documents, particularly at the final stage of this litigation. With Lamb's case forcibly ended by this Court, and Liberty's Counterclaim voluntarily ended, the Liberty Documents are not relevant to the adjudication of any claim. Nor are the Liberty Documents even relevant to Lamb's meritless request for fees as a condition on Liberty's voluntary dismissal; they do nothing to support his assertions of bad faith, and this Court need not even consider them to deny Lamb's request and rule on Liberty's motion. As such, Liberty's interests in maintaining the confidentiality of its sensitive, internal information and communications outweighs zero public interest in accessing the same. For this reason, this Court should allow the Liberty Documents to remain permanently under seal. *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir.2004) (holding it was not an abuse of discretion to refuse to

unseal documents containing confidential and proprietary business information)*; In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 1558123, at *1-2 (E.D. Va. Feb. 7, 2020) (granting motion to seal to documents that "contain[ed] confidential communications and information").

### b. Liberty would be prejudiced if the Liberty Documents are unsealed.

Liberty would be prejudiced by the unsealing of the Liberty Documents. *See RLI Ins. Co.*, 2020 WL 2616516, at *2 (observing that a court ruling on a motion to unseal should consider "the injury the resisting party would suffer" if the documents are unsealed"). Should Liberty's internal communications be unsealed, the willingness of Liberty employees to engage in open and through discussion and deliberation of sensitive issues would be chilled at the very minimum. As this Court expressly recognized in its order granting Liberty's preliminary injunction, *"[p]ublic interest favors the protection of internal communications and iterative work product."* (ECF No. 37 at 3) (emphasis added). This Court further reasoned that "*Universities cannot function without confidence that their internal communications, especially on sensitive issues, will be kept in confidence.*" (*Id.*) (emphasis added). Indeed, discouraging the frank consideration of sensitive issues by unsealing Liberty Documents is contrary to the interests of both Liberty and the public; there is no doubt that that a large University engaging directly with such issues is in the best interest of the general public.

Unsealing of the Liberty Documents would also risk disclosure of Liberty's litigation strategies, which could harm Liberty in pending and future litigation. *See Phase II Chin, LLC v. Forum Shops, LLC*, 2010 WL 2695659, at *3 (D. Nev. July 2, 2010) (finding "good cause to seal" corporate defendant's "internal memorandum" because it was "reasonably foreseeable" that defendant "would suffer specific harm from public disclosure of the mechanics of its litigation strategy").

Moreover, unsealing of the Liberty Documents would not only prejudice Liberty's interests but also the privacy interests of the students involved in the Title IX proceedings detailed in many of the Liberty Documents. Such students, both current and former, have no interests in Lamb's complaints of bad faith and request for attorneys' fees. Public disclosure of the Liberty Documents risks identification of these students based on the context of the communications, despite redaction of their names and other identifying information. This Court should issue an Order directing the Liberty Documents to remain permanently under seal.[5]

## CONCLUSION

For all the reasons above, this Court should deny Lamb's request to unseal the Liberty Documents and keep the Liberty Documents permanently under seal in compliance with the agreed upon Protective Order entered in this case.

Dated: May 30, 2023

Respectfully submitted,

LIBERTY UNIVERSITY, INC.
BY COUNSEL:

 /s/ Scott C. Oostdyk
Scott C. Oostdyk (VSB No. 28512)
Heidi E. Siegmund (VSB No. 89569)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000

---

[5] Liberty would also be prejudiced by the public disclosure of the documents Judge Ballou ordered Liberty to produce related to the October 1, 2021 convocation speech based on Judge Ballou's belief that Liberty had waived its privilege and work product as to those documents. *See* (LU13; 17; 20; 31.) Liberty reserves the right to appeal this waiver ruling, but if the Documents are unsealed and publicly disclosed, any potential reversal on appeal would be effectively and prejudicially mooted.

(804) 775-1061 (facsimile)
soostdyk@mcguirewoods.com
hsiegmund@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send a true and correct copy to all counsel of record.

                                                   /s/
Scott C. Oostdyk (VSB No. 28512)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000
(804) 775-1061 (facsimile)
hsiegmund@mcguirewoods.com